**Ray MOBERG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 04–87–00443–CR, 04–87–00444–CR.**

Court of Appeals of Texas,
San Antonio.

May 10, 1989.

Rehearing Denied June 7, 1989.

David R. Weiner, San Antonio, for appellant.

Fred G. Rodriguez, Tina Tussay, Jay Brandon, Criminal Dist. Attys., San Antonio, for appellee.

Before PEEPLES, BIERY and CARR, JJ.

OPINION

PEEPLES, Justice.

After the trial court denied his motions to suppress the fruits of a search, appellant Ray Moberg pleaded guilty to two separate charges of sexual assault of a child. Pursuant to a plea bargain, he was sentenced to consecutive twenty-year terms for each offense. Having preserved his right to appeal the court's rulings, he contends that the motions to suppress should have been granted, and that without the unlawfully seized pictures and the evidence developed as a result of their seizure, the evidence is insufficient. We uphold the trial court's rulings on the motions to suppress and affirm the convictions.

Both complainants, S.B. and L.F., are young girls who were respectively three and five years old when the offenses occurred. In February of 1985, Moberg enticed and kidnapped S.B. while she was playing, sexually abused her, made photographs of the sexual events, and returned her to her neighborhood, where she was eventually reunited with her family. Moberg did the same thing to L.F. in May of 1985. Each case went unsolved until January 1987, because the police could not identify the perpetrator.

In the early hours of January 11, 1987, the police arrested Moberg at a motel pursuant to a valid arrest warrant involving an entirely separate offense—aggravated sex-

ual assault of his teenage daughter. After Moberg had been taken to the police station, the officers returned to the motel room at approximately 4:00 a.m., were allowed entry by the manager, and removed Moberg's belongings, including a suitcase, an ice chest, a laundry basket, and various items of clothing. All of these things were inventoried and taken to the police department's property room. The laundry basket contained 94 photographs, some simply showing nude young girls and other showing a male engaged in sexual activity with various young girls. Even though Moberg was staying alone in the motel room and had rented it for only one night, he did not ask the police or the motel manager to turn over his belongings to anyone, nor did he otherwise ask to make arrangements for their safekeeping. Several days later, investigators identified L.F. and S.B. from the pictures, and ultimately the charges involved in the present appeals were brought.

Moberg argues that (1) the search was illegal, (2) without the photographs obtained during the search, the S.B. and L.F. cases would not have been solved, and (3) therefore the evidence to convict him of these two offenses is tainted, requiring that the convictions be reversed. We hold that the search was lawful, and therefore we affirm the convictions.

■ The State defends the rulings below on several grounds,[1] but we address only two. The State contends that the photographs were validly obtained through an inventory search. Moberg argues that inventory searches pertain only to vehicles and not to motel rooms, which are the equivalent of homes and other permanent dwellings. Our examination of the authorities shows that Moberg's conception of inventory searches is too narrow, and that

his notion of the expectation of privacy in a motel room rented for one night from which the arrestee has been lawfully removed is too expansive.

Some of the cases upholding inventory searches have involved impounded automobiles, but others have involved luggage and other belongings in the possession of an arrestee. See, e.g., Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (search of backpack found in defendant's van); Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (search of arrestee's shoulder bag); South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (search of glove compartment of impounded abandoned automobile). The Texas courts have approved the procedure in cases that involved automobiles. See Gauldin v. State, 683 S.W.2d 411, 415 (Tex.Crim.App.1984); Wooldridge v. State, 696 S.W.2d 252, 254 (Tex.App.—San Antonio 1985, pet. ref'd).

Lafayette expressly applied the inventory search concept to "any container or article in [the arrestee's] possession." 462 U.S. at 648, 103 S.Ct. at 2610. In addition to cases concerning automobiles and luggage carried by the arrestee, one recent case has upheld an inventory search of a hotel room after its occupant was arrested. See United States v. Pryor, 652 F.Supp. 1353, 1370–72 (D.Me.1987). We believe that under the facts of this case the inventory search was proper as applied to the arrestee's property from which the arrest had separated him, and which might not have been properly itemized and cared for if the arresting authorities had not taken protective action.

By their very nature inventory searches take place only when a suspect is lawfully in custody, as Moberg was at the time the

---

1. The State argues that (1) Moberg, having abandoned the room, has no standing to contest the search, (2) the manager consented to it, (3) the evidence would have inevitably been discovered, 4) the procedure was a lawful inventory search, and 5) even without any tainted evidence, the evidence is sufficient to sustain the conviction.

Moberg contends the search violated U.S. CONST. amends. IV and XIV; TEX. CONST. art.

I, § 9; and TEX.CODE CRIM.PROC.ANN. arts. 18.01, 18.02 and 38.23. Moberg's constitutional search and seizure arguments (Amendments IV and XIV of the U.S. Constitution and art. I, § 9 of the Texas Constitution, and the implementing provisions of art. 38.23 of the Code of Criminal Procedure) are discussed in the text. Articles 18.01 and 18.02 of the Code of Criminal Procedure apply to search warrants, and therefore are not germane to this appeal.

police returned to the motel room. When there has been an arrest, a standard routine inventory search[2] of the arrestee's belongings serves important governmental interests. Such searches help protect the police department from false claims of theft,[3] and they protect the property itself from unauthorized interference or pilferage. *Bertine,* 479 U.S. at 373, 107 S.Ct. at 742; *Lafayette,* 462 U.S. at 646, 103 S.Ct. at 2609. Inventory searches can also protect the police from danger, but we reject any suggestion that evidence found during an inventory can be introduced only when the arrestee was within reach of items that could have hidden a weapon. Protection of the police is only one of several purposes served by inventory searches. Even when no property is inventoried, the police are entitled to protect themselves by searching and seizing items in the area within the arrestee's reach. *See, e.g., Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Inventory searches have been upheld primarily because when police are allowed to itemize and account for the property in the arrestee's possession, there is less risk that such property will be lost or stolen, or that the arrestee will accuse the police of stealing or losing his possessions. *See Bertine,* 479 U.S. at 373, 107 S.Ct. at 742. Those purposes are well served by applying inventory search principles to the present case.

While the property inventoried in this case might have remained safe and undisturbed at the motel, that possibility is not controlling.[4] Nothing in the constitution

---

2. It is the standard written policy of the San Antonio Police Department to inventory "the personal property in [an arrestee's] possession." The police department's written policy was introduced at the suppression hearing. Section 600.06 of that policy (entitled "Care of Prisoner's Property") states, "When a person is arrested, it becomes the duty of the officer or officers who have him in custody to safeguard all personal property in his possession." We cannot accept Moberg's argument that this policy is inapplicable because it simply mentions property in possession and does not specifically refer to motels.

The Supreme Court has stressed the existence of standard inventory procedures and their usefulness in helping rank and file officers avoid subtle distinctions about when and when not to inventory. *Bertine,* 479 U.S. at 374–75, 107 S.Ct. at 742; *Lafayette,* 462 U.S. at 648, 103 S.Ct. at 2610. We note that in this case the police were acting in their caretaking capacity. Officer Flowers specifically described the inventory as a "safekeeping" procedure "to make sure the man gets all his belongings back and to prevent any complaint the man might want to go down and file [alleging theft]." He said the policy is followed "when there is no one else to return the property to." Officer Jackson also testified that the police department was implementing its policy of safeguarding an arrestee's property after an arrest away from his home. Officer Anderson testified to similar effect.

The court in *Gauldin v. State,* 683 S.W.2d 411, 415 (Tex.Crim.App.1984), an automobile case, indicated its approval of caretaking inventory searches, provided there is proof the police were really following their standard inventory procedure. In the present case, the trial court impliedly found that the police were following their inventory procedure, and his finding is amply supported by the testimony of officers Flowers, Jackson, and Anderson, and by the written policy itself.

3. We do not suggest that Moberg could have successfully sued the police for failing to care for his belongings, or that he could have convinced a jury that they had stolen from him. But such claims are not unknown, and courts cannot dismiss them summarily simply because the official denies wrongdoing. *See, e.g., Clayton v. Shaw,* 548 F.2d 1155, 1156 (5th Cir.) (trial court could not adjudicate arrestee's claim for lost property without going through "some fact finding procedures"), *cert. denied,* 434 U.S. 873, 98 S.Ct. 220, 54 L.Ed.2d 153 (1977); *Kimbrough v. O'Neil,* 545 F.2d 1059, 1060–61 (7th Cir.1976) (intentional taking of prisoner's property is actionable).

These decisions must be assessed in light of *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), which held that a prisoner may not bring suit under 42 U.S.C. § 1983 for intentional deprivation of property if the State provides a post-deprivation remedy. It would appear that *Hudson* will simply channel many of these claims from federal to state court. Negligent, unintended deprivations of property are not actionable under 42 U.S.C. § 1983. *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). We express no opinion concerning the circumstances under which Texas law might permit an arrestee to sue the arresting officers for losing his property. In any event, we heartily agree with the Supreme Court that police departments may implement and follow standardized procedures to prevent or minimize such claims. *Bertine,* 479 U.S. at 373–75, 107 S.Ct. at 742–43; *Lafayette,* 462 U.S. at 646–48, 103 S.Ct. at 2609–10.

4. At the suppression hearing, the motel manager testified that the motel's usual practice was to

requires the police to lock a car, post a guard, or place the arrestee's possessions in storage. *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. at 2610–11. Nor must they use the least intrusive means of safeguarding his property. *Bertine*, 479 U.S. at 374–75, 107 S.Ct. at 742–743; *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. at 2610–11. Police may inventory even locked automobile trunks and glove compartments, and they are not required to seal and store shoulder bags and backpacks. *Bertine*, 479 U.S. at 374–75, 107 S.Ct. at 742; *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. at 2610–11. The authorities are not required to offer the arrestee a chance to make other arrangements, or to ask him whether he wants his valuables protected. *Bertine*, 479 U.S. at 373–74,[5] 107 S.Ct. at 742.

Similarly, it is of no moment that at the time of the inventory search, Moberg was safely in custody at the police station. Inventory searches are not restricted to the "station-house setting." *Bertine*, 479 U.S. at 373, 107 S.Ct. at 742. And there may be a significant lapse of time between arrest and search. *See United States v. Johns*, 469 U.S. 478, 481, 105 S.Ct. 881, 883, 83 L.Ed.2d 890 (1985) (upholding search of packages that occurred three days after their seizure from truck).

We stress that Moberg was arrested during a one-night stay at a motel. He was not arrested at home, where his belongings could have remained secure while he was in custody. He was occupying the motel room alone. Upon being arrested, he made no effort to ask that others be called to come and care for his possessions. After his arrest his belongings were probably even less secure than the contents of the locked trunks and glove compartments, and the "lockable" shoulder bags and backpacks, that have been at issue in the more common inventory cases. Under the somewhat unusual facts of this case, we conclude that the search was lawful as an inventory search of the belongings of a man who had been lawfully arrested, and whose possessions the police reasonably and in good faith inventoried pursuant to a standard written policy.

■ We also conclude that the search was valid because the motel manager gave the officers his voluntary and lawful consent. After Moberg was in custody, the officers returned to the motel and sought the manager's consent to enter the room. During their conversation the manager learned that Moberg had registered under a false name, and the officers learned that the room was rented only until noon that day. The manager allowed the officers into the room, where they inventoried and removed Moberg's ice chest, clothes, and clothes basket, which contained the polaroid photographs depicting female children performing acts of sex on the private parts of an unidentified male.

As a general rule, the manager of a motel can consent to a search when the patron has abandoned the room, or his rental term has expired, but not while he is still occupying it. *Compare Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960) (upholding warrantless search of motel room upon manager's consent after arrestee had left), *with Stoner v. California*, 376 U.S. 483, 84 S.Ct.

---

keep abandoned property for six months. But there is no indication that this was made known to the officers on the night of the arrest.

**5.** Before *Lafayette* and *Bertine* were decided, one court had distinguished *Opperman* and refused to uphold an inventory search of an arrestee's hotel room. *See United States v. Lyons*, 706 F.2d 321, 331–35 (D.C.Cir.1983). *Lyons* rests in part on facts that are not present in this case, and in part on reasoning that has been disapproved by *Lafayette* and *Bertine*. The *Lyons* court seemed to place importance on the fact that *Opperman* involved an automobile; *Lafayette* applied these principles to the arrestee's possessions even though he was arrested in a

theater. *Lyons* stressed that the police had not asked the arrestee, who was present during the search, whether he wanted to make arrangements for the safekeeping of his property. 706 F.2d at 335. *Bertine* expressly refused to require police to make that offer. 479 U.S. at 373, 107 S.Ct. at 742. The *Lyons* court mentioned that the police department's inventory policy was "ambiguous and poorly documented," but assumed arguendo that it existed. 706 F.2d at 335 n. 22. In the present case the written policy was introduced into evidence and officers Flowers, Anderson, and Jackson testified that they were following it.

889, 11 L.Ed.2d 856 (1964) (disapproving warrantless search of hotel room, even though desk clerk had allowed officers to enter while suspect was temporarily away). *See generally* Annotation, *Admissibility of Evidence Discovered in Warrantless Search of Rental Property Authorized By Lessor of Such Property—State Cases,* 2 A.L.R.4th 1173 (1980).

In *Abel,* the person arrested took with him what he wanted and left other items in the motel room. Apparently he paid his bill upon leaving, while Moberg had paid his bill in advance. F.B.I. agents immediately searched Abel's room, admittedly in quest of evidence. Concerning this search and the evidence seized, the Court said:

> [The search] was entirely lawful, although undertaken without a warrant. This is so for the reason that at the time of the search petitioner had vacated the room. The hotel then had the exclusive right to its possession, and the hotel management freely gave its consent that the search be made.

362 U.S. at 241, 80 S.Ct. at 698.

We believe *Abel* sufficiently justifies the search of the room that Moberg left upon his arrest. There was no real chance that he would return before noon to claim his possessions. The motel's personnel would have been cleaning the room in a few hours and making it ready for the next patron. These circumstances distinguish the present case from those involving apartments and hotel or motel rooms in which the suspect, who has not been arrested, is still living. In *Stoner,* for example, the occupant of the hotel room had not been arrested, had not abandoned the room, and in fact was still living there. In these two different situations—the first involving an arrested tenant whose term has almost expired, and the second, a mere suspect who is simply away temporarily from the premises—there is a vast difference in one's reasonable expectation of privacy.

The fact that Moberg left the motel under arrest before checkout time is not critical; he had no reasonable expectation of privacy in a motel room from which he had been lawfully removed. *United States v.*

*Rahme,* 813 F.2d 31, 35 (2d Cir.1987); *United States v. Ramirez,* 810 F.2d 1338, 1341 n. 3 (5th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987); *United States v. Rambo,* 789 F.2d 1289, 1295–96 (8th Cir.1986); *United States v. Lee,* 700 F.2d 424, 425 (10th Cir.), *cert. denied,* 462 U.S. 1122, 103 S.Ct. 3094, 77 L.Ed.2d 1353 (1983); *United States v. Haddad,* 558 F.2d 968, 975 (9th Cir.1977). Clearly the consent search would have been valid if the officers had waited until noon and Moberg's right to occupancy had terminated. *United States v. Rahme,* 813 F.2d at 34; *United States v. Ramirez,* 810 F.2d at 1341 n. 3; *United States v. Larson,* 760 F.2d 852, 854–55 (8th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985); *Voelkel v. State,* 717 S.W.2d 314, 315–16 & n. 1 (Tex.Crim.App.1986); *Cherry v. State,* 488 S.W.2d 744, 756 (Tex.Crim. App.1972), *cert. denied,* 411 U.S. 909, 93 S.Ct. 1538, 36 L.Ed.2d 199 (1973). We hold that *Abel* and not *Stoner* applies, and that the manager's consent was effective.

Having concluded that the search was valid as an inventory search and also as a search pursuant to the manager's consent, we overrule Moberg's sole point of error. The judgments in both cases are affirmed.