The STATE of Texas, Appellant,

v.

Carlos GARCIA, Appellee.

No. 04–90–00079–CR.

Court of Appeals of Texas, San Antonio.

Oct. 17, 1990.

**138**

Ed Bartolomei, San Antonio, for appellant.

Fred G. Rodriguez, Jennifer Gray, Ann Zaragoza, Edward Shaughnessy, III, Criminal Dist. Attys., San Antonio, for appellee.

Before PEEPLES, BIERY and ONION, JJ.

## OPINION

JOHN F. ONION, Jr., Justice.[1]

This is an appeal by the State from an order granting a motion to suppress evidence. *See* TEX.CODE CRIM.PROC.ANN. art. 44.01(a)(5) (Vernon Supp.1990); TEX. CONST. ANN. art. V, § 26.

Appellee was charged by information with the offense of unlawfully carrying a handgun. TEX. PENAL CODE ANN. § 46.02(a) (Vernon 1989). In his motion to suppress, he contended that his vehicle "was searched without any probable cause for the officer to believe he had committed the offense of Driving With License Suspended."

San Antonio Police Officer, Donald Dalton, testified he was on patrol on December 20, 1989. About 4:15 p.m. he observed a 1969 Buick with the seatbelts of both the driver and his passenger "flapping in the wind." He had made a number of arrests for violations of the seatbelt law.[2] At that time Officer Dalton ran a registration check on the computer on the 1969 Buick to make sure the vehicle was not stolen and to "make sure that nobody in the car is wanted for any warrants or crimes." This was for his protection since a fellow officer had been shot several days earlier. The Buick had a 1990 sticker on the license plate, but the computer reflected that only a 1989 sticker had been issued for the vehicle.

Dalton stopped the 1969 Buick near the intersection of Evers Road at East Rolling Ridge. As the officer approached the Buick, he observed that neither the driver nor his passenger were using any portion

---

1. Presiding Judge, Retired, Texas Court of Criminal Appeals, sitting by assignment pursuant to TEX.GOV'T CODE ANN. § 74.003(b) (Vernon 1988).

2. *See* TEX.CIV.STAT.ANN. art. 6701d, § 107C (Vernon Supp.1990).

of their seat belts. The officer identified appellee as the driver of the Buick and appellee's brother, Christopher Garcia, as the passenger. Appellee was unable to produce proof of liability insurance, but did produce a driver's license. Upon checking through his mobile data terminal, Officer Dalton discovered that appellee's driver's license had been suspended. Appellee admitted the same. The officer told the appellee to get out of the car and then informed him that he was under arrest for driving while his license was suspended. *See* TEX.R.CIV.STAT.ANN. art. 6701h, § 32(c)(1) (Vernon Supp.1990). Appellee was handcuffed. Christopher Garcia, the passenger, was asked to get out of the Buick and to stand on the sidewalk. Officer Dalton revealed that this was done for his protection. Appellee was placed in the police patrol car. As Dalton recalled, appellee's brother, Christopher, presented a driver's license and asked if he could drive the Buick. Upon checking, Officer Dalton discovered that Christopher's license was also suspended. He explained to Christopher that if the Buick was released to him to drive, then Christopher would be guilty of the offense for which his brother had just been arrested. The officer later testified that it was a matter of police policy not to release a car to someone unauthorized to drive, for in the event of a subsequent accident "it comes back to myself and the City of San Antonio."

Officer Dalton then stated that under the circumstances he felt it was necessary to conduct an inventory search: the Buick was in the roadway and might be hit by another vehicle; there were valuables in the car; he had, at the time, no one to whom he could release the car; and he was following standard operating procedure established by the San Antonio Police Department. He then called for a towing truck.

On direct-examination Officer Dalton was asked:

Q. For what purpose did you do that inventory?

A. To check for valuables, make sure there was nothing in the vehicle that might get taken from one of the City Towing personnel or maybe burglarized there at the pound.

Q. So it is to protect the defendant's personal belongings that might be in the vehicle that is taken?

A. Yes, ma'am.

Q. Okay.

THE COURT: Also to protect the officer so he won't be accused of stealing something that they later claimed was in the vehicle that was inventoried. That's just probably as procedure. *Please move on to something else.*

(Emphasis added).

The prosecutor moved on and showed that Officer Dalton commenced his search of the passenger compartment of the Buick by looking under the driver's seat. There he saw a black .22 caliber automatic pistol. "The butt of the gun was facing forward for an easy access." There was a bullet in the chamber and the pistol was "cocked back," ready for firing. The magazine in the pistol contained eight additional bullets. The inventory was completed and some twenty-five or thirty items were listed and placed in the police vehicle.

The towing wrecker arrived, "hooked up" the Buick, and was ready to leave when appellee's father arrived and blocked the path of the wrecker with his vehicle. The father paid the "hook-up" fee and took custody of the Buick. The search had been completed prior to the father's arrival. Officer Dalton denied that at any time the appellee or his brother indicated to him that they were going to call someone to come and get the Buick. Officer Dalton acknowledged that appellee's brother left the scene and went toward a convenience store, but Dalton assumed he was seeking transportation to a doctor's office, where he had claimed he had an appointment.

Appellee testified that the Buick belonged to his parents and he was driving it only to take his brother to the doctor. He and his brother were using the lap portion of their seatbelts but did not know how to use the shoulder restraints. He denied that any portion of the seat belts were "flapping in the wind." Appellee did not dispute the officer's testimony except to

indicate that when the officer approached the Buick appellee immediately got out of the car. Appellee also offered evidence that the Buick had been properly registered at the time, indicating that the computer information Officer Dalton had received was in error.

At the conclusion of the suppression hearing the trial court stated: "That is one of the two charges. I find probable cause for Driving While License Suspended." This was the thrust of appellee's broadly worded motion to suppress. Later, the trial court stated: "I am granting your motion on the unlawfully carrying and deny it on the Driving While License Suspended."

■ The practice of securing and inventorying the contents of automobiles in police custody and control is not necessarily violative of the constitutional prohibition against unreasonable searches and seizures. *South Dakota v. Opperman*, 428 U.S. 364, 365, 375, 96 S.Ct. 3092, 3095, 3100, 49 L.Ed.2d 1000 (1976); *Cady v. Dombrowski*, 413 U.S. 433, 439, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). A routine inventory search of an automobile may be made without a warrant if standard procedures are followed, is not a pretext for an investigatory motive, and if the scope of the search is reasonable. *Opperman*, 428 U.S. at 365, 96 S.Ct. at 3095. Inventory searches have been upheld primarily because when police are allowed to itemize and account for the property in the arrestee's possession there is less risk that such property will be lost or stolen, or that the arrestee will accuse the police of stealing or losing his possessions. *Colorado v. Bertine*, 479 U.S. 367, 373, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987); *see also Illinois v. Lafayette*, 462 U.S. 640, 646, 103 S.Ct. 2605, 2609, 77 L.Ed.2d 65 (1983).

■ Before an inventory search of an automobile may be upheld there must be a lawful impoundment. *Benavides v. State*, 600 S.W.2d 809, 810 (Tex.Crim.App.1980). The burden of proof is upon the State to show a lawful inventory search. *Ward v. State*, 659 S.W.2d 643, 646 (Tex.Crim.App. 1983). Texas cases have approved inventory procedure involving automobiles. *See*

*Guillett v. State*, 677 S.W.2d 46, 49 (Tex. Crim.App.1984); *Wooldridge v. State*, 696 S.W.2d 252, 254 (Tex.App.—San Antonio 1985, pet. ref'd).

In *Stephen v. State*, 677 S.W.2d 42, 43–44 (Tex.Crim.App.1984), the Court wrote:

In *Benavides v. State*, supra, this Court stated that one of the instances in which an automobile may be validly impounded and inventoried is where "the driver is removed from his automobile and placed under custodial arrest and no other alternatives are available other than impoundment to insure the protection of the vehicle. *Evers v. State*, 576 S.W.2d 46 (Tex.Cr.App.1978); *Christian v. State*, 592 S.W.2d [625] (Tex.Cr.App.1980); *Daniels v. State*, supra," [600 S.W.2d 813, Tex.Cr.App.1980]. *Benavides v. State*, supra [600 S.W.2d] at 811. See also *Gary v. State*, 647 S.W.2d 646, 649 (Tex.Cr.App.1983) (Opinion on Rehearing). In the case at bar, after appellant was arrested, the only alternative available was to let appellant's passenger take possession of the car. However, she was unable to furnish any kind of identification, not even a driver's license, so the officer appropriately refused to release the car to her.

In *Moberg v. State*, 770 S.W.2d 930, 932–33 (Tex.App.—San Antonio 1989, pet. granted), Justice Peeples, speaking for the court stated:

Nothing in the constitution requires the police to lock a car, post a guard, or place the arrestee's possessions in storage. *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. at 2610–11. Nor must they use the least intrusive means of safeguarding his property. *Bertine*, 479 U.S. at 374–75, 107 S.Ct. at 742–743 [sic]; *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. at 2610–11. Police may inventory even locked automobile trunks and glove compartments, and they are not required to seal and store shoulder bags and backpacks. *Bertine*, 479 U.S. at 374–75, 107 S.Ct. at 742; *Lafayette*, 462 U.S. at 647–48, 103 S.Ct. at 2610–11. The authorities are not required to offer the arrestee a chance to make other arrangements, or to ask him

whether he wants his valuables protected. *Bertine*, 479 U.S. at 373–74, 107 S.Ct. at 742.

(Footnote omitted.)

 In the instant case Officer Dalton made a custodial arrest of the appellee, the driver of the Buick. Appellee's brother was a passenger, but his driver's license was likewise suspended and he left the scene, at least temporarily. The Buick was in the roadway and presented a traffic hazard. Officer Dalton rejected moving the vehicle, or parking and locking it for fear of a subsequent burglary of the vehicle. Confronted with these circumstances and with little alternative, Officer Dalton, following a standardized procedure of the police department,[3] conducted an inventory search at that particular time. There is no showing that the officer acted in bad faith or for the sole purpose of a general criminal investigation. The inventory search was not excessive in scope.[4] The loaded handgun was immediately found under the driver's seat. The vehicle contained a number of valuable tools, the possible subject of theft. The inventory search was not unreasonable. After the conclusion of the search, the arrival of the towing truck, and the "hooking up," appellee's father arrived to claim the Buick. His appearance on the scene at that time did not undo the validity of the earlier inventory search.

 Further, in *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981), the Court rejected a case-by-case application of the *Chimel* rule (*Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)) to automobiles in favor of a standard procedure governing all cases. When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident to that arrest, search the passenger compartment of that automobile, including the contents of any containers found within the passenger compartment. *See also Osban v. State*, 726 S.W.2d 107, 111 (Tex.Crim.App.1986) (search incident to arrest valid under the United States Constitution equally valid under the Texas Constitution, *citing Brown v. State*, 657 S.W.2d 797, 799 (Tex.Crim. App.1983)); *Carver v. State*, 746 S.W.2d 869, 871 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd).

*Belton* has been held applicable even though the arrested defendant has been handcuffed and placed in a police car. *United States v. White*, 871 F.2d 41, 43–44 (6th Cir.1989); *United States v. Karlin*, 852 F.2d 968, 970–72 (7th Cir.1988), *cert. denied*, 489 U.S. 1021, 109 S.Ct. 1142, 103 L.Ed.2d 202 (1989); *State v. Hensel*, 417 N.W.2d 849 (N.D.1988); *see United States v. Arango*, 879 F.2d 1501, 1505–07 (7th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1111, 107 L.Ed.2d 1019 (1990).

 In the instant case, the search of the passenger compartment, which revealed the loaded handgun, was incident to the contemporaneous arrest of the appellee for the offense of driving while his license was suspended, as was the situation in *Osban*, 726 S.W.2d at 111. Appellee, the driver of the Buick, was arrested while located in or near the vehicle. The fact that appellee was handcuffed and placed in the police vehicle just prior to the search does not prevent the application of *Belton's* "bright line" rule in Texas. *Linnett v. State*, 647 S.W.2d 672, 675 (Tex.Crim.App.

---

**3.** "We conclude that here as in *Lafayette* [462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983)], reasonable police regulations relating to inventory procedures administered in *good faith* satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine*, 479 U.S. at 374, 107 S.Ct. at 742 (emphasis added.)

In *Stephen*, 677 S.W.2d at 44, the court pointed out that the State satisfied its burden concerning inventory of property seized through testimony of officers that an inventory policy existed and that that policy was followed.

**4.** *See Daniels*, 600 S.W.2d at 815, where the court wrote:

The inventory search that was conducted was not excessive in scope. The weapons were found under the seat. Also, the fact that the inventory search was conducted prior to the automobile being towed rather than at the city pound makes no difference.... The weapons were lawfully seized and property admitted into evidence.

1983), is distinguishable because a custodial arrest was not involved.

Under this record the search was sustainable both as an inventory search and as a search incident to a contemporaneous arrest. The thrust of appellee's written motion to suppress evidence simply was that there was no probable cause to arrest for driving while his license was suspended. The trial court correctly held that there was such probable cause, but erred, given the facts and circumstances of the case, in suppressing the fruits of a valid search.

The order granting the motion to suppress evidence is reversed, and the cause is remanded to the trial court.