Gary Wayne **PETTIGREW**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–93–512–CR.

Court of Appeals of Texas,
Fort Worth.

Sept. 29, 1995.

Rehearing Overruled Nov. 16, 1995.

**566**

Jim Shaw, Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of Appellate Section, Lynn Allison Bollish, Peter Keim, Terry Barlow, Assistant Criminal District Attorneys, Fort Worth, for Appellee.

Before DAY, LIVINGSTON and DAUPHINOT, JJ., and PATRICE M. BARRON, J., Former Justice (Sitting by Assignment).

## OPINION

LIVINGSTON, Justice.

Gary Wayne Pettigrew ("appellant") was found guilty of possession with intent to deliver a controlled substance, amphetamine, and sentenced to fifteen years' imprisonment by the trial court. In two points of error, appellant argues the trial court erred by admitting evidence seized during a warrantless search of appellant's automobile and in refusing to grant his motion for an instructed verdict, based on failure to prove the appellant's possession. We affirm because we find the evidence was seized after a valid arrest and because there was sufficient evidence to link the controlled substance to the appellant.

Officer Glen Cole of the Arlington Police Department was on patrol the night of May 9, 1991. He drove past 3809 Kippers Court in Arlington, Texas, a residence where he had previously made arrests for narcotics violations. Officer Cole saw two unoccupied vehicles in the driveway and wrote down the license plate numbers so he could check them. One of the cars was registered to appellant, for whom there was an outstanding warrant based on a parole violation.[1] Officer Cole contacted Officer Buchanan for backup.

Appellant was spotted driving his vehicle. The officers followed the car back to the 3809 Kippers Court residence. The officers did not activate their lights or sirens. When the car pulled into the driveway at 3809 Kippers Court, Officers Cole and Buchanan both parked their cars on the street. Appellant got out of the vehicle and began walking quickly to the front door of the house. The officers got out of their cars, yelled appellant's name, drew their weapons, and ordered appellant to the ground. Appellant complied. Officer Cole told appellant, "You're under arrest for a parole violation." Officer Buchanan handcuffed appellant.

Appellant was taken to Officer Buchanan's patrol car, and his pockets were searched. The search yielded $4,212 in cash, a small glass vial containing a white powder residue, three gold rings, a gold watch, one or two knives, keys, and a wallet that contained a Texas inmate card. Appellant was placed in the back seat of Officer Buchanan's patrol car that was still parked on the street.

The officers' versions of the search of appellant's car, what items were visible in the car, and how they came to view the items varied. Officer Cole testified that after he and Officer Buchanan searched appellant and placed appellant in the squad car, he went to where appellant's car was parked. Officer Buchanan explained that he and Officer Cole walked back to the house to talk to the people who had gathered outside after placing appellant in the car. After talking with them, he and Officer Cole "walked over to the [appellant's] car" and "looked inside."

Officer Cole testified that he saw a syringe on the console. Based on the syringe and the vial found on appellant, Officer Cole believed "there could be narcotics inside the vehicle." Officer Cole testified that there was a portion of a blue bank bag protruding

---

1. The warrant issued revoking appellant's parole was for his change of residence to an unknown location and his failure to participate in the electronic monitoring program.

from under the driver's seat that was "readily visible" from outside the vehicle. Based upon the blue bag and the syringe, Officer Cole decided to search the vehicle.

According to Officer Buchanan, he observed a microwave in the back seat and a syringe on the console of the car. He did not recall seeing anything else in "plain view." Officer Buchanan testified that he and Officer Cole "then searched the vehicle to see what all was in it."

During the search, the officers opened the blue bank bag. The blue bank bag contained eight syringes, a DC plug adapter, a set of scales, a glasses case, miscellaneous documents, and a zippered black pouch. The zippered pouch contained another syringe and some clear plastic baggies with white powder in them. The white powder was later determined to be amphetamine and cocaine, and it was this evidence that formed the basis for this conviction.

■ In his first point of error, appellant argues the evidence seized from the search of the automobile should have been suppressed because the search was an illegal warrantless search. "It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so." *New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768, 772 (1981). As the movant in the motion to suppress, appellant met his initial burden of defeating the presumption of proper police conduct by establishing that the search of his automobile occurred without a warrant.

■ Once the search was shown to be warrantless, the burden shifted to the State to prove the reasonableness of the warrantless search. *Russell v. State*, 717 S.W.2d 7,

9–10 (Tex.Crim.App.1986). The U.S. Supreme Court has recognized several exceptions to the warrant requirement based on "the exigencies of the situation." These exceptions are an inventory search,[2] the "plain view" doctrine,[3] "the automobile exception,"[4] and a search and seizure incident to a lawful arrest.[5] *See Aitch v. State*, 879 S.W.2d 167, 172 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd).

■ On a motion to suppress, the trial judge is the trier of fact, and as such, is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court is in the best position to make the determinations because it has the advantage of viewing the evidence firsthand, seeing the demeanor and expression of the witnesses, and judging the witnesses' credibility. *See Jackson v. Virginia*, 443 U.S. 307, 319–20, 99 S.Ct. 2781, 2789–90, 61 L.Ed.2d 560, 573–74 (1979); *Geesa v. State*, 820 S.W.2d 154, 178 n. 12 (Tex. Crim.App.1991).

■ Our review of a trial judge's fact findings is limited to the issue of whether the fact findings are supported by the record. *Romero*, 800 S.W.2d at 543. If the fact findings are supported by the record, we will not disturb them on appeal; rather, we will address only the question of whether the trial court improperly applied the law to the facts. *Id.*

■ Additionally, when reviewing a trial court's decision on a motion to suppress, we must affirm the decision of the trial court if the decision is correct on any theory of law which finds support in the record. *Calloway v. State*, 743 S.W.2d 645, 651–52 (Tex.Crim. App.1988); *Shannon v. State*, 800 S.W.2d

---

2. *See South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); *see also Robertson v. State*, 541 S.W.2d 608 (Tex.Crim. App.1976), *cert. denied*, 429 U.S. 1109, 97 S.Ct. 1145, 51 L.Ed.2d 563 (1977).

3. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990); *see also State v. Haley*, 811 S.W.2d 597, 599 (Tex.Crim.App.1991).

4. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *see also Christopher v. State*, 639 S.W.2d 932, 935 (Tex.Crim. App. [Panel Op.] 1982).

5. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

896, 899 (Tex.App.—San Antonio 1990, pet. ref'd). If the record reveals the trial court's decision is based on an incorrect theory, but the decision is correct under another legal theory supported by the record, the trial court's decision will not require reversal. *See Calloway,* 743 S.W.2d at 651–52; *Shannon,* 800 S.W.2d at 899. As the trial judge in this case did not specify the basis for allowing the evidence from the search to be admitted, we must determine whether the record supports a conclusion that the warrantless search at issue fell within any one of the four recognized exceptions to the warrant requirement. We find that it does.

*Inventory Search*

■ We will first look at the inventory search exception. In order to have a proper inventory search, there must be a lawfully impounded vehicle. *See Backer v. State,* 656 S.W.2d 463, 464 (Tex.Crim.App.1983). The record in this case reveals no lawful impoundment, and therefore, the inventory search exception is not a valid basis for the admission of the items seized from appellant's car in this case.

*Plain View*

■ Next, we consider the plain view exception. The "plain view doctrine" provides that police officers may seize items in plain view if: 1) the officers have a right to be where they are when the discovery is made; and 2) it is immediately apparent to the police that the items viewed are associated with criminal activity. *State v. Haley,* 811 S.W.2d 597, 599 (Tex.Crim.App.1991).

Here, the officers' testimony regarding the layout of the scene varied. Officer Cole indicated that appellant was in the yard about ten feet from the front door and about ten feet from appellant's vehicle when the police ordered him to the ground. Officer Buchanan estimated that appellant was thirty or forty feet from the car at the time he was arrested. Officer Buchanan approximated the yard to be twenty-five feet wide. According to Officer Cole, Officer Buchanan's vehicle, in which appellant was placed, was twenty to twenty-five feet from where appellant was arrested. Officer Buchanan estimated the officers' cars were fifty to sixty feet from the front door of the house.

The trial judge determined that the officers did not meet the first requirement—the officers did not have a right to be by appellant's car at the time they observed the evidence at issue in this case. Specifically, the trial judge concluded:

> [T]he route reversed [sic] by the officers in making the original arrest of the defendant, and then returning him to the automobile, did not carry them within plain sight of the syringe, which was in the console of the automobile.

> And with the further finding that any return trip that might have been made by the officers would not have justified their—would not have placed them in a position where they should legally have been in order to make any such observation.

The testimony at trial regarding the route traveled by the officers and the circumstances surrounding their "presence" at the vehicle came from Officer Cole and Officer Buchanan. The trial judge's determination that the officers' route would not "have placed them in a position where they should legally have been" is supported by the record, and we, therefore, cannot conclude that the search in question met the first requirement of the "plain view doctrine." Because the officers did not have a right to be where they were when the discovery was made, the search of appellant's car was not justified under the plain view doctrine. *See Haley,* 811 S.W.2d at 599.

We further point out, that the trial court's findings regarding the officers' right to be by the car was limited to the court's discussion of the applicability of the plain view exception, not the plain view exception *and* the search incident to arrest exception as claimed by the dissent.

*Automobile Exception*

■ Third, we must consider whether the search fell within the "automobile exception." A warrantless search of an automobile is allowable where there is probable cause to believe that the automobile contains contraband or evidence of a crime. *Carroll v.*

*United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Aitch,* 879 S.W.2d at 173. The justification for this exception is that vehicles are readily mobile and the expectation of privacy with respect to an automobile is relatively low. *Aitch,* 879 S.W.2d at 173 (citing *South Dakota v. Opperman,* 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000, 1004 (1976); *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970)). Further, as with all warrantless searches, there must be a showing of exigent circumstances that justifies the failure to first obtain a warrant. *Aitch,* 879 S.W.2d at 174 (citing *United States v. Cisneros–Mireles,* 739 F.2d 1000 (5th Cir.1984)).

In this case, there is no showing of exigent circumstances excusing the failure to obtain a warrant before searching the car. *See Gauldin v. State,* 683 S.W.2d 411, 414–15 (Tex. Crim.App.1984). Unlike *Chambers,* this case does not involve a stop of a vehicle on the open highway. Instead, the car in question was parked in a private driveway. Further, the police officers testified that they retrieved keys to the car from appellant. Unlike the robbery in *Chambers* where there were accomplices still at large, there is no evidence in the record of a similar concern in this case. Finally, there were two police officers and two squad cars at the scene. An officer could have remained at the scene until a search warrant was obtained to prevent anyone from "mobilizing" the automobile or tampering with items in the automobile. Because the State failed to sustain its burden of proof by establishing the existence of exigent circumstances, the search in this case does not fall within the "automobile exception."

*Search Incident To Arrest*

The State contends on appeal that the search of appellant's car was a lawful search incident to arrest. As stated earlier in this opinion, when reviewing a trial court's decision on a motion to suppress, we will uphold the decision if the record in the case supports the decision on any legal ground. *Calloway,* 743 S.W.2d at 651–52; *Shannon,* 800 S.W.2d at 899. Thus, a reviewing court can affirm a ruling on a theory not advanced at trial by the State if the record on appeal supports the theory. *Shannon,* 800 S.W.2d at 899. Therefore, this court must affirm the trial court's decision as a lawful search incident to arrest if the record supports that theory even though the theory was not advanced by the State at trial. *Id.*

■ Appellant in this case, however, argues we cannot affirm the ruling as a search incident to arrest because the State conceded at trial that the search was not a legal search incident to arrest. Appellant argues the State waived this theory at trial. Appellant points to one statement by the prosecutor during the motion to suppress to support his claim that the State waived "search incident to arrest" as a ground for upholding the search.

However, the statement in question occurred while the State was arguing the facts to support a plain view search, the State's primary theory at trial. When the prosecutor digressed into a discussion of probable cause, appellant's attorney asked, "Could I get a clarification from the State then, Judge? Are you alleging that this is a search incident to arrest?" The prosecutor responded:

No. What I'm saying, Judge, is that's the facts leading up to it.

What I'm saying is that the officer— assuming from my argument again, that the officer was lawfully there, what the officer saw was a syringe in plain view. Did he have probable cause to search that car even if the defendant consented or didn't consent?

The trial judge then directed the prosecutor back to the issue of whether the police officer was lawfully in the driveway.

The Texas Court of Criminal Appeals has adopted "the classic definition of waiver." *Capistran v. State,* 759 S.W.2d 121, 123 (Tex. Crim.App. [Panel Op.] 1982). Waiver is defined as " 'an intentional relinquishment or abandonment of a known right or privilege.' " *Id.* (quoting *Robles v. State,* 577 S.W.2d 699 (Tex.Crim.App.1979)). We do not believe the single isolated statement made during the middle of arguing another theory for upholding the search was an intentional relinquishment of the right to have an appellate court

review the record for evidence supporting the theory that the search in this case was a lawful search incident to arrest. Further, we do not believe the two other defense counsel's statements cited by the dissent prevented defense counsel from arguing that the search was not incident to an arrest. The statements quoted by the dissent *are* such arguments.

In the first instance, despite the court's statement that the defense did not need to go into a discussion of *New York v. Belton,* defense counsel proceeded to make exactly such arguments.

The second instance is simply defense counsel's assertion that the State had allegedly conceded the search was not incident to arrest. As stated above we do not believe the State made such a direct statement or acquiescence. We, therefore, conclude that the State did not waive the right to have the search upheld as a search incident to arrest.

▆ In determining whether the exception applies, first, there must be a lawful arrest. Contrary to appellant's contentions, the parole revocation warrant or "blue warrant" was a valid warrant. *See Garrett v. State,* 791 S.W.2d 137, 139 (Tex.Crim.App. 1990). Therefore, appellant's arrest was lawful.

▆ A search following a lawful custodial arrest is permitted because of the need to remove any weapons that the arrestee might attempt to use in order to resist arrest or to effect escape and the need to preserve evidence. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969); *Smith v. State,* 759 S.W.2d 163, 166 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). The scope of the search, however, must be " 'strictly tied to and justified by' the circumstances which rendered its initiation permissible." *Chimel,* 395 U.S. at 762, 89 S.Ct. at 2039, 23 L.Ed.2d at 693 (quoting *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904 (1968)). Thus, the searchable area in a search incident to a lawful arrest is the area from which an arrestee might gain possession of a weap-

on or destructible evidence. *Chimel,* 395 U.S. at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

▆ *Belton* recognized this principle, but rejected a case-by-case application of the rule when confronting automobile searches. *Belton,* 453 U.S. at 458, 101 S.Ct. at 2863, 69 L.Ed.2d at 773. Under *Belton,* when a police officer has made a lawful custodial arrest of the occupant of a vehicle, the officer may make a contemporaneous search of the vehicle. The officer is entitled to search the entire passenger compartment of the vehicle as the area within the arrestee's immediate control. 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774; *Osban v. State,* 726 S.W.2d 107, 111 (Tex.Crim.App.1986), *overruled to the extent in conflict with Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App. 1991).

▆ Since *Belton,* courts have used this "bright-line" rule for the search of an automobile following a lawful arrest, allowing police officers to search the passenger compartment of the arrestee's vehicle if the arrestee was an occupant or recent occupant of the vehicle. *See Osban,* 726 S.W.2d at 111. A search under *Belton* is allowed even when the arrestee has been handcuffed and placed in a police car. *See State v. Garcia,* 801 S.W.2d 137, 141 (Tex.App.—San Antonio 1990, pet. ref'd). Applying the "bright-line" rule to this case, the search of appellant's car was a lawful search incident to arrest because the police officers observed appellant driving the vehicle immediately prior to arresting him only feet from where the vehicle was parked. Abandoning the "recent occupant" provision would create an incentive for detainees to attempt to flee the scene to avoid a search. Appellant's first point of error is overruled.

▆ In his second point of error, appellant argues the trial court erred by refusing to grant appellant's motion for an instructed verdict on the ground that there was no "affirmative link" between the appellant and the amphetamine.[6] In reviewing

6. A challenge to a trial court's denial of a motion for instructed verdict is actually a challenge to

the sufficiency of the evidence to support the conviction. *Cook v. State,* 858 S.W.2d 467, 470

the sufficiency of the evidence to support a conviction, the evidence is viewed in the light most favorable to the judgment. *Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). The critical inquiry is whether, after so viewing the evidence, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

■■■■ The sufficiency of the evidence is a question of law. The issue on appeal is not whether we as a court believe the State's evidence or believe that the defense's evidence outweighs the State's evidence. *See Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim.App.1991); *Wicker v. State,* 667 S.W.2d 137, 143 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984). The judgment may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson,* 819 S.W.2d at 846.

■■■■ The standard for review is the same for direct and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 158–62. In the past, the State has successfully argued that *Geesa* redefined the law such that traditional "affirmative link" analysis requiring a direct "link" between the contraband and the defendant in a circumstantial evidence drug case is no longer appropriate. In *Brown v. State,* 878 S.W.2d 695 (Tex.App.—Fort Worth 1994, pet. granted), this court held that because the "affirmative link" analysis is so closely tied to the "reasonable hypothesis analysis" rejected in *Geesa,* it is "no longer viable in light of *Geesa.*" *Brown,* 878 S.W.2d at 699. However, in a recently published opinion, *Howell v. State,* No. 2-93-454-CR, 1995 WL 515836 (Tex.App.—Fort Worth Aug. 31, 1995, no

pet. h.) this court specifically rejected the court's prior decision in *Brown* to the extent it held that the affirmative link analysis was no longer viable as an element of proof in possession offenses. Therefore, we will review the evidence presented in the instant case to determine whether there is sufficient evidence to establish the requisite affirmative link factors. In conducting this review we will use the *Jackson v. Virginia* standard of review. 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

■■■■ The "affirmative link" analysis is used to review the evidence of the accused's knowledge and control of the contraband. *Martinets v. State,* 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet.). When a defendant is charged with possession of a controlled substance, the evidence must affirmatively link the defendant to the contraband. *Green v. State,* 892 S.W.2d 220, 222 (Tex. App.—Texarkana 1995, pet. filed). Among the factors to be considered in determining whether an affirmative link exists is: 1) the defendant's presence when the search warrant was executed; 2) whether the contraband was in plain view; 3) the defendant's proximity to and the accessibility of the narcotic; 4) whether the defendant was under the influence of narcotics when arrested; 5) whether the defendant possessed other contraband or narcotics when arrested; 6) whether the defendant made incriminating statements when arrested; 7) whether the defendant attempted to flee; 8) whether the defendant made furtive gestures; 9) whether there was an odor of the contraband; 10) whether other contraband or drug paraphernalia was present; 11) whether defendant owned or had the right to possess the place where the drugs were found; and 12) whether the place the drugs were found was enclosed. *Id.; Chavez v. State,* 769 S.W.2d 284, 288–89 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd).

The contraband in this case was found in an enclosed area—a vehicle—and the appellant was the last person driving the vehicle.

(Tex.Crim.App.1993) (citing *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990)). We must review all the evidence introduced at the guilt/innocence phase of trial. *Madden,* 799 S.W.2d at 686.

The vehicle was registered to appellant. The blue bag in which the contraband was discovered was protruding from under the driver's seat according to one of the officers at the scene, and thus, was readily accessible to appellant. Further, there was other contraband and drug paraphernalia in the vehicle: a syringe on the console of the car and eight syringes and a set of scales in the blue bag containing the drugs. Other drug paraphernalia and contraband—$4,212 in cash, a small glass vial containing a white powder residue, and one or two knives—were found on appellant.

We hold that the evidence in this case was sufficient to "link" appellant to the contraband and to permit the trial judge to reasonably infer and conclude that appellant was in possession of the amphetamine. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

DAUPHINOT, Justice, dissenting.

Because the majority misconstrues the record in support of its finding that the search of Appellant's vehicle was justified as a search incident to arrest, I respectfully dissent.

As the majority points out, when the prosecutor argued probable cause to search, counsel for Appellant asked, "Could I get a clarification from the State then, Judge? Are you alleging that this is a search incident to arrest?" The prosecutor responded "No." The majority refers to this exchange as a "single isolated statement made during the middle of arguing another theory for upholding the search." A careful reading of the record shows that this is simply not the case. Counsel for the State recognized that the search of the vehicle could not be justified as a search incident to arrest. And the trial judge agreed with him.

When counsel for Appellant attempted to argue that the search could not be justified as a search incident to arrest, he was not allowed to do so. More specifically he argued:

[COUNSEL:] We got a guy that's arrested away from the car. It's not a search incident to arrest, like in Belton verses New York or—

THE COURT: You don't need to go into that.

The next day counsel for Appellant was again arguing the invalidity of the arrest. He concluded by stating: "Not that—not that it's particularly germane to this case, because the State has already conceded that this was not an arrest—a search incident to arrest."

It is clear that Appellant was not allowed to argue that the search was not a search incident to arrest because the State agreed that the search was not properly a search incident to arrest and because the court implicitly agreed with the State. In his oral findings of fact and conclusions of law, the trial judge specifically found that:

the route reversed [sic] by the officers in making the original arrest of the defendant, and then returning him to the automobile, did not carry them within plain sight of the syringe, which was in the console of the automobile.

And with the further finding that any return trip that might have been made by the officers would not have justified their—would not have placed them in a position where they should legally have been in order to make any such observation.

If a search incident to arrest were permissible under the facts presented to the trial court, the officers could have returned lawfully to Appellant's car. They would then have been in a position to see the syringe in plain view. When the trial judge found no lawful reason for the officers' returning to the car, he implicitly found the officers were not justified in placing themselves at or in the car for any reason.

Unlike *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the officers in the case before us did not initiate the stop. They did not activate their lights. Instead they waited until Appellant pulled into the driveway, parked his car, got out, and began walking to the house. They did not suggest they were searching the area from which Appellant might gain a weapon or destroy evidence. Remember, Appellant

was already walking toward the house when first confronted by the officers. The officers observed no violation of the law and did not testify they returned to the car to preserve evidence. There is, consequently, no suggestion that they knew of evidence to be found in the car.

The record reflects no exigent circumstances to avoid the constitutional and statutory warrant requirement. Appellant's car was parked in the driveway on private property. The record shows Appellant was handcuffed and in the police car when the officers went first to talk to the people in the house and then detoured to look in Appellant's automobile "to see what all was in it." Since the officers had taken the contents of Appellant's pockets, they had his car keys. Nowhere do the officers state any reason they could not have locked the car, left one officer at the car, and called for a warrant if they indeed had probable cause to search. The State stipulated the white residue found on Appellant was not contraband. They saw the syringe which may or may not have provided probable cause after they went back to the car. The cocaine they found as a result of the search was under the seat in a black pouch inside a zipped blue bank bag. And again, there is no evidence Appellant fled from his car to prevent its search.

There is no evidence to contradict the trial court's factual and legal finding that the officers had no lawful reason to return to Appellant's car.

For this court now to hold the search proper as a search incident to arrest is fundamentally unfair because: (1) the State assured Appellant in open court that there was no attempt to justify the search as a search incident to arrest; (2) the trial judge told Appellant that there was no need to offer evidence to rebut that theory; and (3) the trial judge stopped Appellant when he attempted to present the law regarding this theory of admissibility. Additionally, the majority now substitutes its own finding of fact for that of the trial judge. The officers either had a lawful reason for returning to the car or they did not. The trial judge found they did not.

For these reasons I dissent to the thoughtful and diligently researched opinion of the majority.