COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-04-366-CR

 

RAUL ORTIZ REYES                                                             APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Raul Ortiz Reyes appeals his
conviction and sentence for possession of 400 or more grams of cocaine with
intent to deliver.  In five issues,
appellant challenges the legal and factual sufficiency of the evidence to support
his conviction, complains that the trial court erred by overruling his motion
to suppress evidence and by receiving the jury=s verdict because the verdict was vague and uncertain, and argues that
the trial court=s judgment
should be reformed to reflect only one conviction and sentence rather than
two.  We affirm the trial court=s judgment as reformed.








At 9:30 or 10:00 a.m. on
April 17, 2003, the Tarrant County Sheriff=s Office received a tip concerning appellant from a desk clerk at the
Comfort Suites hotel located at 6405 South Freeway in Fort Worth.  The desk clerk reported several suspicious
factors arising from appellant=s check-in at the hotel earlier that morning.  For instance, appellant paid in cash, was
evasive about how long he would need the hotel room, left the vehicle
identification portion of his registration form blank, and upon the desk clerk=s request, gave the clerk an invalid license plate number for his
vehicle. 

Deputies Kevin Turner and
Chuck Wiesman from the Tarrant County Sheriff=s Department were dispatched to investigate the desk clerk=s tip.  In addition, Buster, a
drug-sniffing dog assigned to Deputy Wiesman, accompanied them.  Buster alerted on appellant=s hotel room door.  An hour or
so later, Buster alerted on the passenger side of the Chevy Tahoe in which
appellant had been a passenger.  The
deputies called for back-up assistance and were joined by Deputy Floyd Heckman
and a Sergeant Dennis. 








The deputies then knocked on
appellant=s hotel room
door.  Alberto Garcia answered the door
and consented to the deputies= entry into the room.[2]
The deputies believed, however, that consent to search had to come from
appellant, since he had registered for the room.  When appellant claimed that he had a limited
English vocabulary, the deputies asked Garcia to translate for appellant.  Garcia advised that appellant understood what
the deputies were asking, but did not translate the consent to search form for
appellant. The deputies then contacted the Fort Worth Police Department and
requested a translator.[3]


Julio Quepons, a citizen with
Fort Worth=s Code Blue
program, arrived to translate for appellant.  
After Quepons explained to appellant what was being requested and that
he did not have to consent to the search, appellant told Quepons it was fine to
search the room.  Quepons, in turn, told
the deputies that appellant had consented to a search of the room, and
appellant signed a consent-to-search form. 

As a result of the search,
the deputies found 5.1 kilos of cocaine, with a street value of $250,000, and
$30,000 in cash hidden in appellant and Garcia=s room.  The money was found in
a camouflage bag stuffed between the box springs and frame of one of two beds
in the room.  The cocaine was discovered
in a black and grey duffel bag that had been placed under the box springs of
the second bed. 








Thereafter, appellant was
indicted, tried, and convicted by a jury of possession of 400 or more grams of
cocaine with intent to deliver.  This
appeal followed. 








In his first and second
issues, appellant contends the evidence is legally and factually insufficient
to support his conviction because it does not sufficiently link him to the
cocaine to establish the element of possession.        To support a conviction for unlawful possession of a
controlled substance, the State must affirmatively link the accused to the
contraband by proving that the accused (1) exercised care, control, and
management over the contraband and (2) knew the substance he possessed was
contraband.[4]  The defendant=s mere presence at the scene of the offense is not enough.  Rather, when the accused is not in exclusive
possession of the place where the substance is found, the State has the burden
of presenting evidence of independent facts and circumstances that give rise to
a reasonable inference that the defendant knew of the contraband=s existence and its whereabouts.[5]    Affirmative
links can be proven by direct or circumstantial evidence.[6]
Possible affirmative links include the following:  (1) whether the defendant was present when
the drugs were found;  (2) whether the
drugs were in plain view;  (3) whether
the drugs were found in proximity to and were accessible to the defendant;  (4) whether the defendant was under the
influence of drugs;  (5) whether the
defendant possessed other contraband or drug paraphernalia;  (6) whether the defendant made incriminating
statements; (7) whether the defendant attempted to flee;  (8) whether the defendant made furtive
gestures;  (9) whether there was an odor
of drugs;  (10) whether the defendant
owned or had the right to possess the place where the drugs were found;  (11) whether the place where the drugs were
found was enclosed;  (12) the amount of
drugs found;  (13) whether the defendant
possessed weapons; and (14) whether the defendant possessed a large amount of
cash.[7]









In this case, appellant
acknowledges that he had registered for the hotel room in which the cocaine was
found, that he was sharing the room with Garcia, and that he was present at the
time of the search during which the cocaine and cash were found.  Further, there is evidence of additional
affirmative links, such as appellant=s possession of drug paraphernalia, his engagement in furtive conduct,
and the large amounts of cash and drugs found in appellant=s room.

Possession of drug
paraphernalia.  First, there is evidence that appellant
possessed paraphernalia associated with the cocaine.  For example, the sheriff=s deputies observed appellant and Garcia arrive at the hotel together
in a red Chevy Tahoe that Garcia was driving. 
One or both of them carried a white plastic grocery store-type bag into
the hotel room.[8]  Then appellant returned to the Tahoe,
retrieved a semi-clear yellow plastic bag with a rectangular box inside, and
took it into the hotel room.[9]









When the deputies searched
appellant=s hotel
room, they saw plastic wrappings and rubber bands in plain view, and the
cocaine and cash they found were wrapped in plastic wrap.  In addition, they found a white plastic bag
from a dollar store with a box of Glad plastic wrap and rubber bands
inside.  Also inside the white plastic
bag were a Family Dollar Store receipt, dated April 17, 2003, for the purchase
of a duffel bag, and a High Trails Equipment brand merchandise tag for a duffel
bag.  The duffel bag in which the cocaine
was found was a High Trails Equipment brand duffel bag. 

In addition, the deputies
found a Dollar General Store receipt dated April 17, 2003, on the bathroom
counter and a semi-clear, yellow Dollar General Store plastic bag in the
bathroom wastebasket.  The Dollar General
Store receipt was for the plastic wrap, rubber bands, and several highly
scented personal hygiene products. 
Deputy Turner testified that individuals involved in the distribution of
illegal narcotics commonly use plastic wrap to package the narcotics and
currencyCas was done in this case.  The
currency is wrapped in attempt to mask any residual odor on it from close
contact with the narcotics. Further, persons transporting drugs often use
highly scented hygiene products as odor-masking agents. 








Furtive conduct.  Next, there is evidence that
appellant engaged in furtive conduct.  As
we have already discussed, appellant paid cash for his hotel room, was evasive
about how long he intended to stay, left the vehicle identification portion of
his registration form blank, and then, upon the desk clerk=s request, gave the clerk an invalid license number.  In addition, Quepons testified that, when he
arrived to translate the consent form, appellant and Garcia appeared
nervous.  Moreover, appellant admitted
that he hid the $30,000 cash under his bed mattress at Garcia=s request when the sheriff=s deputies knocked on the hotel room door.  Appellant testified that he did this because
Garcia woke appellant from a nap, began screaming, threw appellant the bag with
the money in it, and told appellant it was his (Garcia=s) money and to save it. 
Appellant testified that he was afraid they were going to be robbed. 

Large amount of cash.  Evidence of a large amount of
cash, such as the $30,000 found under appellant=s mattress, is evidence from which a jury may infer that an individual
is trafficking in, and therefore has possession of, contraband.[10]









Amount and odor of drugs.  Finally, 5.1 kilos, or about
11 pounds, of cocaine were found under Garcia=s bed in appellant=s room, in a duffel bag that had just been purchased that
morning.  Further, Deputy Turner
testified that the cocaine had a distinct smell.  Because appellant and Garcia had arrived at
the hotel earlier that morning in the same vehicle, and because the cocaine was
found in a duffel bag that had just been purchased that day, the jury reasonably
could have inferred that appellant would have either seen or smelled the
cocaine and thus been aware of its presence.

Despite this evidence,
appellant contends that the affirmative links evidence is insufficient because
the cocaine was not in plain view in the hotel room but was found in a duffel
bag under Garcia=s bed, the
cocaine was not easily accessible to appellant, appellant denied having any
knowledge of it, Garcia merely handed appellant the camouflage bag that was
later shown to contain the $30,000 cash, and appellant did not have any
contraband in his possession at the time of his arrest, he was not under the
influence of any drugs, and he did not make any incriminating statements.[11]  








The absence of some
affirmative link factors is not, however, evidence of an appellant=s innocence to be weighed against other evidence tending to link him
to the contraband.[12]  Instead, the issue is whether there is
sufficient evidence linking the appellant to the contraband to support the
reasonable inference that he was knowingly in possession of it.[13]  Based on the evidence we have discussed, we
hold that there is sufficient affirmative links evidence in this case.








In summary, the jury
reasonably could have inferred from the evidence that appellant knew of the
cocaine=s existence and that he exercised care, control, or management over
the cocaine by purchasing or helping to purchase plastic wrap, hygiene
products, and a duffel bag to conceal the cocaine=s presence in the hotel room. 
Although appellant testified that Garcia purchased the plastic wrap and
other products while appellant was asleep in the Tahoe and that appellant had
no knowledge of the cocaineCor the $30,000 in cash until Garcia asked him to hide itCthe jury, as the trier of fact, was free to resolve conflicts in the
testimony, weigh the evidence, and draw reasonable inferences therefrom.[14]  Accordingly, applying the appropriate
standards of review,[15]
we hold that the evidence is legally and factually sufficient to link appellant
to the contraband and establish the element of possession.[16]
Accordingly, we overrule appellant=s first and second issues.

In his third issue, appellant
complains that the trial court erred by overruling his motion to suppress
evidence.  Appellant contends that his
consent to search the hotel room was not voluntary because the deputies had no
consent to enter the hotel room in the first place.  Appellant further contends that his consent
to search was the product of an illegal arrest and was involuntary because he
was detained in his hotel room for over an hour before he signed the consent
form, during which time he was dressed only in his underwear, he was not
allowed to use the bathroom, he was afraid, he was given no Miranda
warnings and was not told that he had the right to refuse to consent to the
search, and Quepons did not translate the consent to search form word for word,
but paraphrased it instead.  We will
address these arguments in turn.








We review a trial court's
ruling on a motion to suppress evidence under a bifurcated standard of review.[17]  At a suppression hearing, the trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.[18]  Accordingly, the judge may believe or
disbelieve all or any part of a witness's testimony, even if that testimony is
uncontroverted.[19]  This is so because it is the trial court that
observes first hand the demeanor and appearance of a witness, as opposed to an
appellate court that can only read an impersonal record.[20]


Therefore, we give almost
total deference to the trial court's rulings on (1) questions of historical
fact and (2) application‑of‑law‑to‑fact questions that
turn on an evaluation of credibility and demeanor.[21]  However, we review de novo a trial court's
rulings on mixed questions of law and fact if they do not turn on the
credibility and demeanor of witnesses.[22]  If the trial court=s decision is correct on any theory of law applicable to the case, the
decision will be sustained.[23]









Consent to search is one of
the well‑established exceptions to the constitutional requirements of
both a warrant and probable cause.[24]  For a consent to search to be valid, it must
be voluntary and cannot be coerced, by either explicit or implicit means.[25]  Consent is not established by showing no more
than acquiescence to a claim of lawful authority.[26]  But a person=s consent is not rendered involuntary merely because he is detained or
under arrest.[27]








Voluntariness is a question
of fact to be determined from all the circumstances surrounding the statement
of consent.[28]  Although the federal constitution only
requires the State to prove the voluntariness of consent by a preponderance of
the evidence, the Texas Constitution requires the State to show by clear and
convincing evidence that the consent was freely given.[29]  If the record supports a finding by clear and
convincing evidence that consent to search was free and voluntary, we will not
disturb that finding.[30]

Consent to enter room.  Appellant=s argument that the deputies had no consent to enter the hotel room is
incorrect.  The record shows that Garcia
answered the door when the deputies knocked on it and identified themselves and
that Garcia Ainvited [the
deputies] into the room.@  Further, appellant acknowledged at trial that
Garcia had authority to allow people to enter the room because he was staying
there, too.[31]


Lawfulness of detention.  Next, appellant argues that he
was Ain essence arrested@[32] during the time before he signed the consent form because he was
detained improperly in his hotel room and was not free to leave.  Appellant contends that his detention was
illegal because the police had no warrant and no probable cause to detain him. 








A law enforcement official
may in appropriate circumstances and in an appropriate manner temporarily
detain a person for investigative purposes even though there is no probable
cause for arrest.[33]  In determining whether such a seizure was
reasonable, we consider (1) whether the officer=s action was justified at its inception and (2) whether it was
reasonably related in scope to the circumstances that justified the
interference in the first place.[34]  Thus, to justify the particular intrusion,
the officer must be able to point to specific and articulable facts that, when
taken together with reasonable inferences from those facts, lead the officer to
conclude that the person detained is, has been, or soon will be engaged in
criminal activity.[35]  These facts must amount to more than a mere
hunch or suspicion.[36]









The Supreme Court has
declined to adopt an outside time limitation for a permissible Terry
stop,[37]
but a continued detention can be justified only for the amount of time needed
to reasonably investigate the subject of the initial detention.[38]  In assessing whether a detention is too long
in duration, we consider whether the police diligently pursued a means of
investigation that was likely to confirm or dispel their suspicions quickly.[39]  The question is not whether some alternative
was available but whether the police acted unreasonably in failing to recognize
or pursue it.[40]  Further, actions by the detained individual
that interfered with efforts to quickly resolve the detention are a factor
properly considered in the determination of whether the prolonged detention was
proper.[41]


In this case, the deputies= initial entry into the hotel room was not a detention because Garcia
invited them inside upon their request. 
Further, when the deputies entered the room, they knew that appellant
had paid cash for the room, had been evasive about how long he would need the
hotel room, had left the vehicle identification portion of his registration
form blank, and then had given the hotel clerk an invalid license plate number
for the Chevy Tahoe in which he had arrived with Garcia. 








The deputies also knew that
the Tahoe was registered to Garcia at a Pharr, Texas address.[42]  Deputy Turner testified that Pharr is a town
on the Texas-Mexico border through which large quantities of narcotics from
Mexico are often shipped for distribution in Texas and the rest of the United
States. Moreover, the deputies knew that Buster, the drug-sniffing dog, had
alerted for the presence of drugs on appellant=s hotel room door and on the passenger side of the Tahoe where
appellant had been a passenger.  Finally,
once he was inside the room, Deputy Turner noticed that the mattress on the bed
closest to the door was raised about a foot off the box springs and that
something appeared to be hidden underneath the bedspread. 








These specific, articulable
facts, when taken together with the reasonable inferences therefrom, were
sufficient to have enabled the deputies to conclude that appellant and Garcia were,
had been, or soon would be engaged in some type of criminal drug activity.[43]  Accordingly, the trial court properly
concluded that the first prong of the Terry test was satisfied, i.e.,
that the deputies were justified in initiating the temporary detention of
appellant to see if he would consent to a search of his room.[44]


Further, the trial court
found that appellant spoke English and that the deputies= detention of appellant for up to an hour before he signed the consent
form was largely the result of appellant=s and Garcia=s actions.[45]  The record supports this finding.[46]








For example, Deputy Turner
testified that the deputies initially believed that appellant spoke English
because he spoke it well enough to register for the hotel room with a desk
clerk who did not speak Spanish.  Garcia,
on the other hand, who admittedly spoke English, did not register for the
room.  In addition, appellant was a
college graduate, and his trial testimony revealed that he could understand the
deputies= conversations in English; he testified that Aone officer told the other one to put me [in] the handcuffs.@ 

After he entered the hotel
room, Deputy Turner asked appellant, in English, if he would consent to a
search of the room for narcotics. 
Appellant responded that he had a limited English vocabulary, but Garcia
said he (Garcia) was able to speak English as well as Spanish.  At Deputy Turner=s request, Garcia asked appellant, in Spanish, if appellant would
consent to a search of the room.  Garcia
told Deputy Turner that appellant understood what was being asked of him.  When Deputy Turner gave Garcia the consent to
search form, however, and asked Garcia to translate it into Spanish, Garcia
acted like he could not understand, and he did not translate the form.  








No Spanish-speaking sheriff=s deputies were on duty that day, so Deputy Turner contacted the Fort
Worth Police Department and asked if a Spanish-speaking officer was
present.  Between fifteen and thirty
minutes after Deputy Turner made the initial request for a Spanish-speaking
sheriff=s deputy or police officer, Quepons arrived.  Quepons testified that he left his home
immediately upon receiving the request to translate and went to the hotel, but
that the hotel was not in his neighborhood. 

Deputy Turner asked Quepons
to (1) translate the consent to search form and (2) ask appellant if he would
give his consent to search by signing the consent form.  After Quepons did the translating, appellant
said, AYes, that=s fine,@ and signed the consent form. 
Deputy Turner estimated that this took only a couple of minutes; Quepons
estimated that it took ten to fifteen minutes. 








This evidence supports the
trial court=s findings
that the detention of appellant before he signed the consent form was due to
his and Garcia=s conduct,
as well as the court=s implied
finding that Deputy Turner had diligently pursued a means of investigation that
was likely to confirm or dispel quickly his suspicions regarding appellant=s illegal drug activity.[47]  Accordingly, the trial court properly
concluded that the second prong of the Terry test was satisfied, i.e.,
that the detention was reasonably related in scope to the circumstances that
justified the interference in the first place.[48]  Because the evidence shows that the primary
purpose of the delay was the deputies= attempt to get an informed answer from appellant regarding whether he
would consent to a search of the room, the trial court properly concluded that
appellant=s signing of
the consent to search form was not the product of an illegal detention.

Voluntariness.  Finally, we turn to appellant=s argument that his consent to search was involuntary because during
his hour-long detention he was dressed only in his underwear, he was not
allowed to use the restroom, he was threatened by the deputies and afraid, he
was given no Miranda warnings and was not told that he had the right to
refuse to consent to the search, and Quepons did not translate the consent to
search form verbatim but paraphrased it instead.

At the motion to suppress
hearing, appellant testified to all these things.  Appellant further testified that he finally
decided to sign the consent formCeven though he did not understand itCbecause he was afraid and needed to use the restroom.  According to appellant, as soon as he did so,
the officers allowed him to use the toilet. 








Conversely, Deputy Turner
testified that the atmosphere of the room was very calm.  Appellant and Garcia were both seated on the
couch, Deputy Turner was in the room, Deputy Wiesman was near the door so that
no one could slam the door and take Deputy Turner hostage, and two other
officers (Deputy Heckman and Sergeant Dennis) stood outside the room near the
door and did not enter the room until after appellant had signed the consent
form.  Only Deputy Wiesman was in
uniform.  The other three deputies were
dressed in street clothes, although they wore sheriff=s vests and badges.  Appellant
and Garcia were not handcuffed.[49]  Although the deputies each had weapons, they
were not drawn, and the deputies did not threaten appellant or Garcia.       Likewise, Quepons and Deputy Heckman
testified that the deputies= guns remained holstered. 
Quepons further testified that, when he arrived to translate, appellant
and Garcia seemed nervous, but the atmosphere was not tense and the deputies
were not yelling or screaming. 

Deputy Heckman testified that
he had no recollection of appellant=s asking to use the restroom. 
Deputy Turner testified that neither appellant nor Garcia asked to use
the bathroom, but they would have been allowed to do so if they had.[50]









Deputies Turner, Heckman, and
Wiesman testified that both appellant and Garcia were dressed when Turner
entered the hotel room.  Deputy Heckman
testified that appellant and Garcia were wearing shirts and either jeans or
shorts.  Deputy Turner testified that
appellant was wearing dark colored slacks and a black T-shirt, and a photo was
admitted into evidence showing appellant in this clothing.[51]  Deputy Turner testified that he never saw
appellant without his pants on. 








Regarding appellant=s signing of the consent form, Quepons testified that he went over the
form and translated for appellant for ten to fifteen minutes. He testified that
he did not translate the form verbatim but instead paraphrased it.  Also, there is no evidence that Miranda
warnings were given.








There is no requirement,
however, that a consent form be translated word for word,[52]
and the failure to give Miranda warnings does not, by itself, render a
consent involuntary.[53]  Here, Quepons testified that he informed
appellant, and appellant seemed to understand, that the officers wanted to
search the room but that appellant did not have to give his consent to the
search.  Quepons denied telling appellant
that it would be better for him to sign the consent form.  Instead, Quepons testified that, when he
asked appellant in Spanish if he would consent to the search, appellant said, AYes, that=s fine@ and then signed the form.[54]  Deputy Turner also denied threatening to get
a search warrant if appellant refused to sign the consent form.  In addition, appellant testified that Garcia
told him not to sign the consent form because Athey need another paper [i.e., a warrant] to do this.@ 

Having carefully reviewed the
record, we hold that the trial court properly determined that the State proved
by clear and convincing evidence that appellant=s consent to search was voluntary and not coerced.[55]  Although there are conflicts between
appellant=s and the
deputies and Quepons=s versions
of the facts, the trial court was free to believe or disbelieve all or any part
of the witnesses= testimony
and to decide what weight to give it.[56]  Accordingly, we will not disturb the trial
court=s finding of voluntariness.[57]


Further, because the evidence
shows that the deputies had consent to enter the hotel room, that appellant was
not illegally detained, and that his consent to search was voluntary, the trial
court properly denied appellant=s motion to suppress.  We
overrule appellant=s third
issue.








In his fourth issue,
appellant complains that the trial court should not have received the jury=s guilty verdict because the verdict is vague and uncertain.  Although appellant concedes that Aa verdict need not specifically name the offense except in cases where
it would otherwise be uncertain,@ he asserts that the verdict in this case Ais uncertain@ and Adoes not condemn a specific offense@ because it fails to show the controlled substance that he allegedly
possessed and its weight.  We disagree.

A verdict must be certain,
consistent, and definite; it may not be conditional, qualified, speculative,
inconclusive, or ambiguous.[58]  AA jury verdict will be held to be sufficient if its meaning can be
reasonably ascertained from the words used.@[59]  Further, as appellant
concedes, AThe charge
of the court may be looked to in aid of a verdict.@[60]  Thus, it is not error for the
trial court to permit the jury to report its verdict on a form that does not
use the precise wording of the charge as tracked in the indictment as long as
it is clear to the court what the verdict is.[61]









In this case, count one of
the indictment alleges that, on or about April 17, 2003, appellant Aintentionally or knowingly possess[ed] a controlled substance, namely
cocaine of four hundred grams or more . . . with intent to deliver said
controlled substance.@  Count two alleges that, on the same date,
appellant Aintentionally
or knowingly possess[ed] a controlled substance, namely cocaine of four hundred
grams or more.@ 

The court=s charge instructed the jury:

Now, if you find from the evidence that on or
about the 17th day of April, 2003, . . . the defendant . . . did then and there
intentionally or knowingly possess a controlled substance, namely cocaine, of four
hundred grams or more . . . with intent to deliver said controlled substance,
then you will find the defendant guilty of the offense of possession with
intent to deliver a controlled substance, as charged in count one of the
indictment.

 

The charge contains a separate application
paragraph for count two, which  tracks
the language of count two of the indictment. 








The verdict form that the
jury signed states, AWe, the
jury, find the defendant, Raul Ortiz Reyes, guilty of the offense of possession
with intent to deliver a controlled substance.@  The jury left unsigned a
separate guilty verdict form that refers only to possession of a controlled
substance.  The signed guilty verdict,
when read in conjunction with the court=s charge, clearly shows that the jury found appellant guilty of the
offense alleged in count one of the indictment and tracked in the application
paragraph of the court=s chargeCpossession of 400 or more grams of cocaine with intent to
deliver.  Accordingly, the jury=s verdict Acan be
reasonably ascertained from the words used,@[62] and the trial court did not err by accepting it.  We overrule appellant=s fourth issue.

In his fifth issue, appellant
contends that the trial court=s judgment improperly conflicts with the jury=s verdict because it recites that appellant was convicted of two
offenses rather than one.  Appellant
asserts that the judgment should be reformed to show that he was convicted of
only one offense.         The trial court=s judgment recites that appellant was convicted of both possession of
400 or more grams of cocaine with intent to deliver and possession of 400 or
more grams of cocaine and that both offenses occurred on April 17, 2003.  The State concedes that the judgment
incorrectly lists convictions and punishments for both counts in the indictment
even though appellant was convicted only of count one and the trial court
orally pronounced a sentence of twenty years= imprisonment and a $10,000 fine for only that count.  Therefore, we sustain appellant=s fifth issue.

Having overruled appellant=s first through fourth issues and sustained his fifth issue, we reform
the trial court=s judgment
to delete the conviction and punishment for the possession offense alleged in
count two of the indictment.  We affirm
the trial court=s judgment
as reformed.[63]

 








PER CURIAM

PANEL
F:    CAYCE, C.J.; LIVINGSTON and MCCOY,
JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
January 5, 2006

 











[1]See Tex. R. App. P. 47.4.





[2]Only
Deputy Turner entered the room.  Deputy
Wiesman stood in the doorway, and the other two officers remained outside.  





[3]No
Spanish-speaking sheriff=s
deputies were available at the time. 





[4]Brown
v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); Menchaca
v. State, 901 S.W.2d 640, 651 (Tex. App.CEl Paso 1995, pet. ref=d).  





[5]Hernandez
v. State, 538 S.W.2d 127, 130 (Tex. Crim. App. 1976); Menchaca,
901 S.W.2d at 651.





[6]Brown, 911
S.W.2d at 747. 





[7]Hernandez, 538
S.W.2d at 131; Taylor v. State, 106 S.W.3d 827, 830-31 (Tex. App.CDallas
2003, no pet.); Pettigrew v. State, 908 S.W.2d 563, 571 (Tex. App.CFort
Worth 1995, pet. ref=d).





[8]There
is some confusion about this evidence. 
Deputy Turner testified initially that he saw appellant get out of the
Tahoe that Garcia was driving and carry a white plastic grocery store bag into
the hotel room.  Later, however, Deputy
Turner testified that Garcia carried in the white plastic bag. 





[9]Appellant
testified at trial and admitted that he had retrieved a bag from the Tahoe, but
he claimed that he had done so at Garcia=s request.  Appellant testified that Garcia had purchased
the items in the bag Apossibly
[from a] dollar store@
while appellant was asleep in the Tahoe. 





[10]See
Dade v. State, 956 S.W.2d 75, 78-79 (Tex. App.CTyler
1997, pet. ref=d).

 





[11]See Hernandez,
538 S.W.2d at 131; Taylor, 106 S.W.3d at 830-31; Pettigrew, 908
S.W.2d at 571 (all listing most of these factors as evidence that can
affirmatively link an accused to contraband).





[12]Hernandez, 538
S.W.2d at 131. 





[13]Id.





[14]Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979);
see also Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912,
919 (Tex. Crim. App. 2000). 





[15]See Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Hampton v. State, 165 S.W.3d 691,
693 (Tex. Crim. App. 2005) (both setting out legal sufficiency standard of
review); Zuniga v. State, 144 S.W.3d 477, 481, 484-85 (Tex. Crim. App.
2004) (setting out factual sufficiency standard).





[16]See
Brown, 911 S.W.2d at 747; Menchaca, 901 S.W.2d at 651.





[17]Carmouche
v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 





[18]State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).





[19]State
v. Gray, 158 S.W.3d 465, 466-67 (Tex. Crim. App. 2005); Ross,
32 S.W.3d at 855.





[20]Ross,
32 S.W.3d at 855.





[21]Johnson
v. State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App.
2002).





[22]Id.





[23]Gray, 158
S.W.3d at 466-67; Ross, 32 S.W.3d at 855-56.





[24]Carmouche,
10 S.W.3d at 331.





[25]Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000); Carmouche,
10 S.W.3d at 331. 





[26]Carmouche,
10 S.W.3d at 331.





[27]Johnson,
68 S.W.3d at 652-53; Reasor, 12 S.W.3d at 818-19.





[28]Reasor, 12
S.W.3d at 818; Carmouche, 10 S.W.3d at 331. 





[29]Carmouche,
10 S.W.3d at 331.





[30]Id.





[31]See
Illinois v. Rodriguez, 497 U.S. 177, 181, 110 S. Ct. 2793, 2797
(1990) (holding that person who has common authority over premises may consent
to warrantless entry of premises for purpose of an arrest or a search).





[32]Appellant
concedes that his Aformal
arrest@
occurred Aafter
the contraband and other evidence were seized in the motel room.@ 





[33]Terry
v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968).





[34]Id. at
19-20, 88 S. Ct. at 1879.





[35]Terry, 392
U.S. at 30, 88 S.Ct. at 1884-85; Brother v. State, 166 S.W.3d 255, 257
(Tex. Crim. App. 2005). 





[36]Brother, 166
S.W.3d at 257; Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App.
1997).





[37]United
States v. Place, 462 U.S. 696, 709-10 & n.10, 103 S. Ct.
2637, 2646 & n.10 (1983).





[38]Davis, 947
S.W.2d at 243.





[39]United
States v. Sharpe, 470 U.S. 675, 686, 105 S. Ct. 1568, 1575 (1985).






[40]Id. at
687, 105 S. Ct. at 1576. 





[41]Id. at
687-88, 105 S. Ct. at 1576.





[42]Deputy
Turner testified that the deputies had, through trial and error, determined
what the correct license number of the Tahoe was and had run a registration
check on it. 





[43]See
Terry, 392 U.S. at 30, 88 S. Ct. at 1884-85; Brother, 166 S.W.3d at
257.





[44]See
Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879.





[45]The
trial court made only three statements that can be construed as fact findings:

 

(1)
They [the deputies] held them [appellant and Garcia] for an hour in their own
room to get a consent to search. 

 

(2) I=m
convinced that the defendant speaks English because I sat and listened to him
on at least three or four occasions answer the question by the prosecutor
before the interpretation was finished. 
And I believe the testimony that he spoke English at the front desk [of
the hotel] because why else would the person who doesn=t
speak English go buy the motel room? 
That doesn=t
make any sense at all.  That doesn=t
comport with human experience.

 

(3) 
And so I find the delays in getting the consent to search were due to
the defendant and his codefendant=s actions and shouldn=t be
charged against the police . . . . 





[46]Although
the finding was oral rather than written, a trial court may express its fact
findings at a suppression hearing orally. 
See State v. Groves, 837 S.W.2d 103, 105 n.5 (Tex. Crim. App.
1992).





[47]See
Sharpe, 470 U.S. at 686-88, 105 S. Ct. at 1575-76.





[48]See
Terry, 392 U.S. at 19-20, 88 S. Ct. at 1879.





[49]Appellant
testified, inconsistently, that he was handcuffed before he signed the consent
form and that he was not handcuffed until after he was arrested following the
search. 





[50]The
record does not support appellant=s contention that the trial
court found that appellant was prevented from using the restroom.  Following an exchange with the prosecutor,
the court simply concluded that appellant was detained because he would
have had to ask to use the restroom, not that he was not allowed to use the
restroom.

 

THE
COURT: . . .  You yourself asked the
question, did they ask you if they could use the restroom.  You know, when you have to ask to use the
bathroom in your own room, you are not a free person.

. . .
.

 

. .
.  They held them in their own room, when
they couldn=t
even use the restroom in their own room for an hour for a consent to search.

 

[PROSECUTOR]:  If we believe the fact that he had to use the
restroom.

 

THE
COURT:  Okay.  Forget the using the restroom.  They held them for an hour in their own room
to get a consent to search.

 

. . .
.

 

. . . 
Okay.  Here=s my
question: Was it is full hour?  Do you
agree with me it was an hour? 





[51]Appellant
testified that the photograph was taken after he was arrested and told to put
on pants. 





[52]See
Gonzalez v. State, 967 S.W.2d 457, 458-59 (Tex. App.CFort
Worth 1998, no pet.) (holding that verbatim Spanish translation of DWI consent
form was not required).





[53]See
Rayford v. State, 125 S.W.3d 521, 528 (Tex. Crim. App. 2003)
(holding that neither failure to inform accused that he can refuse to consent
nor failure to give Miranda warnings automatically renders consent
involuntary), cert. denied, 125 S. Ct. 39 (2004).





[54]See
Garcia v. State, No. 01-98-00626-CR, 1999 WL 796808, at *4 (Tex.
App.CHouston
[1st Dist.] Oct. 7, 1999, pet. ref=d) (not designated for
publication) (holding that Spanish-speaking defendant=s
consent to search was voluntary when he orally gave his consent after the
matter was explained to him in Spanish and he understood that he was signing a
consent to search form that would allow deputies to search his vehicle).





[55]See
Reasor, 12 S.W.3d at 818; Carmouche, 10 S.W.3d at 331.





[56]Gray,
158 S.W.3d at 466-67; Ross, 32 S.W.3d at 855.





[57]See
Carmouche, 10 S.W.3d at 331.





[58]Clemons
v. State, 676 S.W.2d 356, 357 (Tex. Crim. App. 1984).





[59]Ortiz
v. State, 577 S.W.2d 246, 250 (Tex. Crim. App. 1979). 





[60]Caballero
v. State, 171 Tex. Crim. 133, 346 S.W.2d 343, 345 (1961).






[61]Bradley
v. State, 655 S.W.2d 256, 258 (Tex. App.CCorpus
Christi 1983, no pet.).





[62]Ortiz, 577
S.W.2d at 250.





[63]See Tex. R. App. P. 43.2(b).