The STATE of Texas, Appellant,

v.

David KELLY, Appellee.

No. 04–97–00223–CR.

Court of Appeals of Texas,
San Antonio.

Feb. 18, 1998.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for Appellant.

Eric Karl, San Antonio, for Appellee.

Before STONE, GREEN and DUNCAN, JJ.

## OPINION

STONE, Justice.

This is an interlocutory appeal by the State from an order granting a motion to suppress evidence. *See* TEX.CODE CRIM. PROC. ANN. art. 44.01(a)(5) (Vernon Supp. 1997). After arresting David Kelly for outstanding traffic citations, San Antonio police officer Peter Ovalle searched Kelly's car and found crack cocaine in a film canister. Kelly was indicted for possession of cocaine in violation of the Controlled Substances Act. He filed a motion to suppress admission of the cocaine into evidence, arguing it was the product of an illegal search under the Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution. The State justified the search of the interior of Kelly's car as a search incident to lawful custodial arrest. After hearing the evidence, the trial court granted Kelly's motion suppressing the evidence. We affirm the trial court's order.

## FACTS

On May 27, 1996, Ovalle was patrolling eastbound on Martin Luther King Boulevard when he noticed that Kelly, who was traveling westbound, was driving with an expired vehicle registration tag. Ovalle made a u-turn and followed Kelly for several blocks without effectuating a stop. Ovalle testified that Kelly sped up once he began to follow him; however, Ovalle did not pursue Kelly for speeding, nor did he issue Kelly a speeding ticket. Eventually, Kelly pulled into his grandmother's driveway. Simultaneously or shortly thereafter, Ovalle turned on his overhead lights and stopped his patrol car in front of the house. At this point, the record presents a confused chronology. The parties' stories are internally conflicting as well as in conflict with one another.

On direct examination, Ovalle testified that Kelly had exited his vehicle and was retrieving a basket of clothes from the trunk when he approached Kelly and asked to speak with him. Kelly responded that he would be right back and took the basket into the house. Ovalle estimated that Kelly was inside the house for only "one or two seconds" before returning to the front yard to speak with him. On cross examination, Ovalle indicated that Kelly was standing on or near his porch, rather than standing next to his trunk, when he first addressed Kelly. By contrast, Terri Collins, a passenger in Kelly's vehicle, stated that Ovalle approached Kelly as he was sitting in his vehicle and asked him to step outside the vehicle. Kelly offered yet another version of where he was standing when Ovalle first spoke to him. On direct examination Kelly placed himself on the front porch when he first noticed Ovalle in the yard. Kelly stated that he approached Ovalle and asked Ovalle why he had stopped him. Kelly testified that after a brief conversation regarding his vehicle registration and ownership, he entered the house to retrieve his driver's license and then returned to the front yard. However, on cross examination, Kelly indicated that he entered the house without noticing or speaking to Ovalle and remained inside for approximately seven minutes. Upon returning to the front yard he met Ovalle and discussed the vehicle registration and ownership. He retrieved his vehicle ownership documentation from the glove compartment and then entered the house a second time to get his driver's license. Kelly estimated that he was inside the house about one minute the second time. He returned to the front yard and handed his license to Ovalle, who by then was standing next to his patrol car.

By all parties' accounts, once Ovalle had Kelly's license, he ran the information through his computer, learned that Kelly had eight outstanding traffic citations, arrested and handcuffed him, and placed him in the patrol car. Ovalle then searched Kelly's car and found a black film canister containing what was later determined to be crack cocaine. Ovalle's stated reason for conducting the search was to look for contraband.

After hearing the evidence, the trial court stated its belief that the arrest was legal, but suppressed the evidence. No findings of fact

were entered. On appeal, the State relies solely upon the search incident to arrest exception to the warrant requirement.

## STANDARD OF REVIEW

■■■ The principal issue of the instant case, whether Ovalle was entitled to conduct a search of Kelly's vehicle following Kelly's arrest, is a mixed question of law and fact. The record in the instant case contains conflicting evidence about the sequence of events, namely when Kelly first came into contact with Ovalle and the timing and duration of Kelly's visit inside the house. The three primary witnesses offered five different versions of the facts to the court. Because the resolution of these issues turned on the evaluation of credibility and demeanor of the witnesses, we review the record applying a deferential abuse of discretion standard of review. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (explaining that appellate courts should afford almost total deference to trial court's rulings on mixed questions of law and fact when resolution of those ultimate questions turn on evaluation of credibility and demeanor). In a suppression hearing, the trial court is the sole trier of fact and the judge of the credibility of the witnesses and the weight to be given their testimony. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996). Thus, the trial court is free to believe any or all of a witness's testimony. *Allridge v. State*, 850 S.W.2d 471, 492 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). In the absence of findings of fact, we presume that the trial court impliedly found the facts necessary to support its ruling. *See State v. Johnson,* 896 S.W.2d 277, 280 (Tex.App.—Houston [1st Dist.] 1995), *aff'd*, 939 S.W.2d 586 (Tex.Crim. App.1996). We view the record and all reasonable inferences therefrom in the light most favorable to the trial court's ruling, and we must sustain the trial court's ruling if it is correct on any theory of law applicable to the case. *Villarreal*, 935 S.W.2d at 138.

## SEARCH INCIDENT TO ARREST

The Fourth Amendment to the United States Constitution and article I, section 9 of the Texas Constitution guarantee the right of the people to be secure against unreasonable searches of their persons, houses, papers, and effects. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9. "It is a first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so." *New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). Thus, warrantless searches are per se violative of the Fourth Amendment's proscription of unreasonable searches unless they fall within one of the specifically established exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). One recognized exception to the Fourth Amendment's warrant requirement is that an officer may search the area within the immediate control of an arrestee. *Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969).[1] The underlying rationale for this rule is the need to remove any weapons that the arrestee might seek to use to resist arrest and to prevent the concealment of the destruction of evidence. *Id.* at 763, 89 S.Ct. at 2040. Where the arrestee was the occupant of a vehicle, however, police had difficulty in determining whether the passenger compartment was actually within an arrestee's reach. In *New York v. Belton*, the United States Supreme Court confronted the difficulty in the application of the *Chimel* standard to searches of automobiles and noted:

> While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant.

---

1. Other recognized exceptions to the warrant requirement include the inventory search, the plain view doctrine, and the automobile excep-

tion. *See Pettigrew v. State*, 908 S.W.2d 563, 568–69 (Tex.App.—Fort Worth 1995, pet. ref'd).

*Belton,* 453 U.S. at 460, 101 S.Ct. at 2864. The court then held that when an officer makes a lawful custodial arrest of the occupant of an automobile, the officer may conduct a contemporaneous search of the passenger compartment of that automobile. *Id.* *Belton* thus defined the passenger compartment of an automobile as being within the hypothetical immediate control of an occupant or recent occupant of the vehicle.

■ A *Belton*-type vehicular search applies only when there has been a lawful custodial arrest of the occupant or recent occupant of a vehicle. *See Gauldin v. State,* 683 S.W.2d 411, 414 (Tex.Crim.App.1984). If an arrestee is not an occupant or recent occupant of a vehicle, *Belton* is not applicable and the validity of the search is examined under a *Chimel* analysis—was the search limited to the area within the immediate control of the arrestee. *See id.; see also Smith v. State,* 759 S.W.2d 163, 166 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

Kelly argues that the trial court correctly suppressed the evidence because at the time of the search he was more recently an occupant of the house, rather than his vehicle, thereby preventing application of the *Belton* rule. The main thrust of the State's brief argument is that because Kelly committed an offense within the presence of Ovalle, the warrantless arrest of Kelly was valid, and therefore, the subsequent search of Kelly's car was permissible under *Belton.* In support of this argument, the State reminds this court of the bright-line approach created in *Belton* to guide law enforcement in the context of a search incident to arrest involving an occupant of a vehicle. We are mindful that the *Belton* rule was crafted in an effort to free officers in the field from making difficult legal decisions during the often-volatile circumstances of an arrest. *See Belton,* 453 U.S. at 458, 101 S.Ct. at 2863. However, *Belton's* "bright-line" only eliminates the officer's need to determine what constitutes the area within the arrestee's reach when the area includes the interior passenger compartment of a vehicle and the arrestee is its recent occupant; the "bright-line" test does not address who is a "recent occupant" for purposes of being subject to a *Belton*-type

vehicular search rather than a *Chimel*-type search.

In most Texas cases involving a *Belton* search, the arrestee was a direct occupant of the vehicle when stopped or approached by the police. *See e.g., Amores v. State,* 816 S.W.2d 407 (Tex.Crim.App.1991); *Osban v. State,* 726 S.W.2d 107 (Tex.Crim.App.1986), *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App. 1991); *State v. Mercado,* 944 S.W.2d 42 (Tex. App.—El Paso 1997, pet. granted); *Ashton v. State,* 931 S.W.2d 5 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd); *Cox v. State,* 931 S.W.2d 349 (Tex.App.—Fort Worth 1996), *pet. dism'd, improvidently granted,* 951 S.W.2d 5 (Tex.Crim.App.1997); *State v. McCall,* 929 S.W.2d 601 (Tex.App.—San Antonio 1996, no pet.); *Flores v. State,* 895 S.W.2d 435 (Tex.App.—San Antonio 1995, no pet.); *Warden v. State,* 895 S.W.2d 752 (Tex. App.—Texarkana 1994, pet. ref'd); *State v. Garcia,* 801 S.W.2d 137 (Tex.App.—San Antonio 1990, pet. ref'd); *Caro v. State,* 771 S.W.2d 610 (Tex.App.—Dallas 1989, no pet.); *Campbell v. State,* 644 S.W.2d 154 (Tex. App.—Austin 1982), *pet. rev'd,* 647 S.W.2d 660 (Tex.Crim.App.1983). In these cases, the arrestee is clearly an occupant of the vehicle within the meaning of *Belton.* Less clear, however, is the case where the individual has exited the vehicle prior to police contact and the individual is removed by time and space from the vehicle at the time of the arrest. The instant case falls within this second category. Because *Belton* speaks in terms of "recent occupant," we are left to determine whether Kelly's occupancy is recent enough to bring the search of his vehicle within the *Belton* rule.

■ In determining whether Kelly was a recent occupant of his vehicle at the time of his arrest, factors such as Kelly's temporal and spatial proximity to his vehicle are examined. *See Gauldin,* 683 S.W.2d at 414. We also examine whether there is evidence of flight or an indication that Kelly quickly exited his vehicle in an attempt to avoid police contact. *See Pettigrew v. State,* 908 S.W.2d 563, 570 (Tex.App.—Fort Worth 1995, pet. ref'd). Further, because exceptions to the warrant requirement must be "jealously and

carefully drawn," *see Coolidge v. New Hampshire*, 403 U.S. 443, 453–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564 (1971), our determination is also guided by the previously noted rationale underlying the search incident to arrest exception. That is, we examine our record cognizant of the fact that *Chimel* permits an arresting officer to conduct a search of the arrestee's person and the area within the arrestee's immediate control because of the need to remove any weapons that the arrestee might seek to use and the need to prevent the concealment or destruction of evidence. *Chimel*, 395 U.S. at 763, 89 S.Ct. at 2040. Logic dictates that the justification for a *Belton* vehicular search loses its philosophical moorings the further removed in space and time an individual is from his vehicle at the time of the arrest.

From the record in the instant case, the trial court was free to believe that Kelly exited his vehicle on his own volition, entered the house before Ovalle made his presence known to him, and remained inside the house for up to seven minutes. The court was also free to believe that after Kelly and Ovalle's initial conversation, Kelly re-entered the house to retrieve his license. Further, the court was free to believe that once Kelly handed over his license to Ovalle, the men were standing next to Ovalle's patrol car which was located at a distance from Kelly's vehicle. Viewing the record in the light most favorable to the trial court's ruling in concert with the recognized justifications underlying this warrantless search, we cannot conclude that the trial court incorrectly determined that Kelly was no longer a recent occupant of his vehicle at the time of his arrest. Kelly had not only been out of his vehicle for at least ten to fifteen minutes by the time of his arrest, but he had physically distanced himself from his vehicle as well. He had entered the house at least once, perhaps twice, and when he relinquished his license, he was standing next to Ovalle's patrol car at a distance from his vehicle. The court could reasonably infer that, absent extraordinary circumstances, Ovalle was in no danger of Kelly retrieving a weapon from Kelly's vehicle. Moreover, considering the nature of the offenses for which Ovalle arrested Kelly, outstanding traffic citations, the need to secure

evidence or to prevent the destruction thereof seems glaringly absent. Because Kelly was not a recent occupant of his vehicle at the time of his arrest, he was not subject to a *Belton*-type search. *See Gauldin*, 683 S.W.2d at 414. The permissible scope of the search was limited to the area within Kelly's immediate control. *See id.*

The order of the trial court is affirmed.