Memorandum Opinion of September 26, 2006 Withdrawn; Affirmed and
Substitute Memorandum Opinion filed February 1, 2007








Memorandum
Opinion of September 26, 2006 Withdrawn; Affirmed and Substitute Memorandum
Opinion filed February 1, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00333-CR

____________

 

SAMUEL RICHARD MARES, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 177th
District Court

Harris County, Texas

Trial Court Cause No. 992,012

 



 

S U B S T I T U T E    M E M O R A N D U M   O P I N I O N

We overrule appellant=s motion for
rehearing, withdraw our memorandum opinion of September 26, 2006, and
substitute the following in its place.








This is an appeal from a conviction for possession of a controlled substance.  Following
the trial court=s denial of his motion to suppress evidence, appellant Samuel
Richard Mares entered a guilty plea to the charge, and the punishment, enhanced
by two prior felony convictions, was assessed by the trial court at thirty
years= confinement.  On appeal, appellant
asserts the trial court erred in overruling his motion to suppress evidence seized
during the search of his vehicle because: (1) the search was not a valid search
incident to arrest, and (2) the detention of appellant=s vehicle after
his arrest was illegal and negated any probable cause obtained as a result of a
canine search and the trial court erred in overruling his motion for new trial
because: (1) the indictment did not allege that he was an habitual offender,
and (2) the court inaccurately admonished him on the range of punishment applicable
to the case.  We affirm.

I.  Factual and Procedural Background

On June 23, 2004, Houston Police Department (AHPD@) officers
assigned to the Harris County Organized Crime Unit conducted surveillance of a
2000 white Cadillac Escalade driven by appellant.  HPD Sergeant H.C. Nichols
observed appellant turning into a parking lot without using his turn signal and
requested via radio that a state trooper initiate a traffic stop of appellant. 
Nichols testified that he saw Department of Public Safety Trooper Claude Davis,
Jr. Afall in behind@ the Escalade, and
saw Davis turn his lights on.  According to HPD Officer Richard Fernandez, Jr.,
he also heard the radio communications, saw Davis=s lights turn on,
and observed Davis=s stop of appellant.  Shortly after both
Davis=s and appellant=s vehicles were
parked, Fernandez arrived at the scene.  At that time Mares was in custody in
Davis=s car.  Thus, the
majority of contested facts concern events that took place between the time
appellant parked his car and the time additional officers arrived on the scene.

Davis testified that as he saw the Escalade in front of
him, he drove toward the vehicle and activated his overhead lights.  He further
testified that as he was pulling up to stop appellant, the Escalade Aimmediately makes
a hard right turn, no type of signal or anything like that, and pulls right in
front of a Starbucks door.@  Davis stated he pulled in behind the
Escalade and approached the driver=s side of the
Escalade but appellant was no longer in his car.  








According to Davis, he entered the coffee shop and asked if
anyone could identify the person driving the Escalade.  After one of the
employees pointed to appellant, Davis approached appellant and asked him if he
was the driver.  Appellant responded, Ayes,@ and Davis asked
him for his driver=s license.  Appellant told Davis he did
not have his license with him.  Davis then asked appellant to provide his name
and date of birth.  Davis testified that he returned to his cruiser Ato run a driving
history check on [appellant]@ and Ato see what type
of criminal record he had.@  After receiving that information, Davis
stated he called for backup Abecause [appellant] was going to be arrested
for driving while license suspended.@  Davis returned
to the coffee shop to inform appellant that he was going to be arrested, and
found appellant attempting to call his girlfriend to have her pick up the
Escalade.  At some point thereafter, appellant=s girlfriend
arrived.  Appellant was then arrested for driving with a suspended license,
handcuffed, and placed in Davis=s cruiser.

Contrary to the testimony of Nichols, Davis, and Fernandez,
appellant testified that Davis never attempted to pull him over.  Instead,
appellant contends that Davis did not approach him until he had been in the
coffee shop for Aabout five minutes.@  Appellant claims
Davis only asked him if he was driving the Escalade and then left the coffee
shop after appellant responded in the affirmative.  According to appellant,
Davis did not approach appellant a second time until after appellant=s girlfriend had
arrived.  Appellant alleges that after he provided Davis with his name and date
of birth, Davis returned to his cruiser for Afive to ten
minutes@ before returning
once again to inform appellant that his license was suspended.  At that point,
appellant stated he gave his girlfriend the key to the Escalade, but was told
by Davis that she would not be allowed to drive away with the vehicle. 
According to appellant, thirty minutes had elapsed between the time Davis first
approached him in the coffee shop and the time he was placed under arrest for
driving with a suspended license.








After appellant was placed under arrest, a canine unit
arrived at the scene. Officers walked the canine around the perimeter of the
Escalade, and it alerted near the driver=s side door.  The
canine was then allowed to enter the vehicle.  It alerted to a tan satchel
which was found to contain two bags of white powder and several prescription
bottles bearing appellant=s name.  The white powder was later
determined to be sixty-five grams of cocaine.         After being indicted for
felony possession of a controlled substance, appellant filed a motion to
suppress the evidence discovered in his vehicle.  The trial court denied his
motion, and appellant entered a guilty plea to the charge and pleaded true to
two felony conviction enhancements.  The court assessed appellant=s punishment at
confinement for a period of thirty years.  Thereafter, appellant filed a motion
for new trial which the trial court subsequently denied.

II.  Issues 
Presented

  In his first issue, appellant contends the State failed
to prove that the search of appellant=s car was legal
under the Texas and United States Constitutions.  Specifically, he argues that:
(1) the search was not a valid search incident to arrest, and (2) the detention
of appellant=s vehicle after his arrest was illegal thereby
negating any probable cause obtained as a result of the dog=s positive alert. 
Appellant argues in his second issue that the trial court erred in overruling
his motion for new trial because: (1) the indictment did not allege he was an
habitual offender, and (2) the court inaccurately admonished him on the range
of punishment applicable to the case.  As such, appellant argues, he did not
knowingly and voluntarily enter a plea of guilty.

III.  Standard
of Review








In a motion to suppress hearing, the trial court is the
sole trier of fact and judge of the credibility of the witnesses and the weight
to be given their testimony.  State v. Gray, 158 S.W.3d 465, 466 (Tex.
Crim. App. 2005) (en banc).  Accordingly, the judge may believe or disbelieve
all or any part of a witness=s testimony, even if that testimony is not
controverted.  Id.  Furthermore, when the trial court fails to file
findings of fact, we view the evidence in the light most favorable to the trial
court=s ruling and
assume that the trial court made implicit findings of fact that support its
ruling as long as those findings are supported by the record.  Id. at
467.  If the trial court=s decision is correct on any theory of law
applicable to the case, the decision will be sustained.  Id.

IV.  Discussion

A.      Denial of
Appellant=s Motion to Suppress

Appellant argues in his brief that the search of his
vehicle was not justified under the Asearch incident to
arrest@ exception to the
warrant requirement because he was not a Arecent occupant@ of the vehicle.[1] 
The State responds that, in the court below, appellant contested only that
there was no probable cause to search his car but never challenged whether the
search was a proper search incident to arrest and, in failing to do so, waived
this issue.  

In order to preserve a complaint for appellate review, a
party must make a timely, specific objection.  See Tex. R. Evid. 103(a)(1); Tex. R. App. P. 52(a); Wilson v.
State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); Johnson v. State,
878 S.W.2d 164, 167 (Tex. Crim. App. 1994) (en banc); see also Garcia v.
State, Nos. 01-94-00818-CR and 01-94-00819-CR, 1995 WL 356018, at * 2 (Tex.
App.CHouston [1st
Dist.] June 15, 1995, no writ) (not designated for publication) (A[L]ike an
objection at trial, a motion to suppress evidence does not properly preserve an
error for appeal unless the objecting party states the specific grounds for the
objection . . . .@).  Further, a point of error on appeal
must correspond to the objection made at trial.  See Wilson, 71 S.W.3d
at 349; Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (en
banc).  An objection stating one legal theory may not be used to support a
different legal theory on appeal.  See Broxton, 909 S.W.2d at 918; Rezac
v. State, 782 S.W.2d 869, 870 (Tex. Crim. App. 1990) (en banc).  








On its face, appellant=s motion to
suppress argues only that the search was illegal because it was conducted without
appellant=s consent and without a valid search warrant or
probable cause.  Similarly, appellant=s argument at the
pretrial hearing raised only the issue of probable cause.  However, a search
incident to arrest does not require consent, a warrant, or separate probable
cause to search.  See New York v. Belton, 453 U.S. 454, 460, 101 S. Ct. 2860, 2864, 69 L. Ed. 2d 768 (1981) (holding that a
police officer may search the passenger compartment of an automobile and any
containers therein as a contemporaneous incident of the arrest of a vehicle
occupant).  At no time did appellant contest the validity of a search incident
to arrest.  Because the trial judge did not have an opportunity to rule on
appellant=s motion based on the argument presented here, nothing
is preserved for our review.  See Rezac, 782 S.W.2d at 871.








However, assuming appellant had preserved error, we would
conclude appellant=s argument lacks merit.  It is well
settled that warrantless searches are per se violative of the Fourth Amendment=s proscription of
unreasonable searches unless they fall within one of the specifically
established exceptions.  See Mincey v. Arizona, 437 U.S. 385, 390, 98 S.
Ct. 2408, 2412, 57 L. Ed. 2d 290 (1978).  One recognized exception to the
Fourth Amendment=s warrant requirement is that an officer
may search the area within the immediate control of an arrestee.  See Chimel
v. California, 395 U.S. 752, 762B63, 89 S. Ct.
2034, 2040, 23 L. Ed. 2d 685 (1969) (concluding search following lawful
custodial arrest is permitted because of need to remove weapons that arrestee
might attempt to use to resist arrest or effect escape as well as need to
preserve evidence); Smith v. State, 759 S.W.2d 163, 166 (Tex. App.CHouston [14th
Dist.] 1988, pet. ref=d).  In New York v. Belton, the
United States Supreme Court expanded the authority to search under this
exception to vehicles.  Belton, 453 U.S. at 460, 101 S. Ct. at 2864 (A[W]hen a policeman
has made a lawful custodial arrest of the occupant of an automobile, [footnote
omitted] he may, as a contemporaneous incident of that arrest, search the
passenger compartment of that automobile.@).  Once an
officer determines that there is probable cause to make an arrest, officers may
ensure their safety and preserve evidence by searching the entire passenger
compartment.  Thornton v. United States, 541 U.S. 615, 623, 124 S. Ct.
2127, 2132, 158 L. Ed. 2d 905 (2004).  A Belton-type search of an
automobile also applies when there has been a lawful custodial arrest of a Arecent occupant@ of a vehicle.  Id.
at 624, 124 S.Ct. at 2131B32; see also State v. Gray, 158
S.W.3d 465, 470 (Tex. Crim. App. 2005) (en banc) (AIncident to [an
arrest for failing to signal a turn], the officer could have lawfully searched
[appellant]=s person and the passenger compartment of [appellant]=s vehicle and the
containers in it.@).  

In determining whether appellant was a recent occupant of
his automobile at the time of his arrest, we examine factors such as his
temporal and spatial proximity to the vehicle.  See Thornton, 541 U.S.
at 615B16, 124 S. Ct. at
2128 (noting that Aan arrestee=s status as a >recent occupant= may turn on his
temporal or spatial relationship to the car at the time of the arrest and
search . . . .@); State v.
Kelly, 963 S.W.2d 866, 869 (Tex. App.CSan Antonio 1998,
no pet.); Caruthers v. State, No. 03-01-00390-CR, 2002 WL 1987608, at *5
(Tex. App.CAustin August 30, 2002, pet. ref=d) (not designated
for publication).  We also examine whether there is evidence of flight or an
indication that appellant quickly exited his vehicle in an attempt to avoid
contact with the police.  See Kelly, 963 S.W.2d at 869; Pettigrew v.
State, 908 S.W.2d 563, 570 (Tex. App. CFort Worth 1995,
pet. ref=d).  








After reviewing the record, we conclude the evidence is
sufficient to show that appellant was a recent occupant of his vehicle. 
Appellant pulled into the coffee shop upon noticing that Trooper Davis had
signaled for him to pull over.  Davis testified he had his Aoverhead lights on@ when he observed
appellant Amake a hard right turn@ as he attempted
to initiate the traffic stop.  According to Davis, when he got out of his car,
appellant was no longer in the Escalade.  When the prosecutor asked Davis AAnd all that had
to happen very quickly since you were right behind him, right?@ Davis responded AYes, ma=am.@  Davis testified
he knew appellant had gone into the coffee shop because Davis could see both
sides of the vehicle and appellant did not go to the right or left of the vehicle,
and so must have gone in front of the vehicle.  The coffee shop was directly in
front of the Escalade.  Davis testified that he was Athat close behind@ appellant such
that he could conclude that appellant could only have entered the coffee shop. 
Davis entered the coffee shop, asked the employees who had exited the vehicle,
and the employees pointed to appellant. After approaching appellant, appellant
admitted he had been driving the Escalade.  

But for his having quickly exited the Escalade and entering
the coffee shop,  appellant would still have been in his vehicle at the time
Davis confronted him, and would have been arrested in his vehicle immediately
after answering the questions that led Davis to conclude he was operating a
vehicle with a suspended license.  Although the location where the inquiry
takes place is not dispositive, it is clear from this record that only
appellant=s flight placed him outside the vehicle at the time he
was confronted by Davis.[2] 
See Pettigrew, 908 S.W.2d at 570 (noting that A[a]bandoning the >recent occupant= provision would
create an incentive for suspects to attempt to flee the scene to avoid a
search . . . .@).  








In reaching this conclusion, we distinguish State v.
Kelly, 963 S.W.2d at 870.  In Kelly, an officer followed the
appellant for blocks without making a stop.  After the appellant parked in his
grandmother=s driveway, the officer turned on his lights and
stopped in front of the house.  Although the testimony offered at the hearing
on Kelly=s motion to suppress
was contradictory, the trial court granted the motion.  In affirming the
ruling, the Fourth Court of Appeals stated the trial court could have found
Kelly was in the house before the officer Amade his presence
known to him,@ had Abeen out of his vehicle for at least ten
to fifteen minutes by the time of his arrest,@ and Ahad physically
distanced himself from the vehicle.@  Id. at
870.  Thus, the result in Kelly is in large measure dictated by the
standard of review, under which the appellate court was required to Apresume that the
trial court impliedly found the facts necessary to support its ruling.@  Id. at
868.

Here, however, the same presumption dictates a contrary
result.  Presuming, as we must, that the trial court found the facts necessary
to support its ruling, we conclude the trial court reasonably could have found
that (1) Davis signaled his intent to stop the appellant; (2) upon seeing
Davis=s lights, the
appellant attempted to evade police by turning suddenly into the parking lot;
(3) the appellant next attempted to flee on foot by entering the coffee shop
and seeking a Aback exit@; (4) the
appellant then attempted to remove evidence by telephoning a third party to
remove the vehicle; and (5) all these events happened in quick succession. 
Based on this evidence, the trial court could have concluded that appellant was
a Arecent occupant@ of the vehicle
whose arrest justified a contemporaneous search of the vehicle he had recently
exited.

Because appellant has waived this issue, and because,
regardless of waiver, we conclude the officers= search of his
vehicle was a valid search incident to arrest, we need not reach appellant=s argument that
the continued detention of his car after his arrest was unlawful.[3] 
Appellant=s first issue is overruled.   

B.      Appellant=s Plea of Guilty
Was Knowingly and Voluntarily Entered   

In his second issue, appellant contends the trial court
erred in overruling his motion for new trial because: (1) the indictment did
not allege that he was an habitual offender, and (2) the court inaccurately
admonished him on the range of punishment applicable to the case.  As such,
appellant argues he did not knowingly and voluntarily enter a plea of guilty.








Here, appellant was charged with possession of a controlled
substance and his punishment, enhanced under Texas Penal Code ' 12.42(d) by two
prior felony convictions, was assessed at thirty years= confinement. 
Section 12.42(d) provides, in relevant part:

If it is shown on the trial of a
felony offense other than a state jail felony punishable under Section 12.35(a)
that the defendant has previously been finally convicted of two felony
offenses, and the second previous felony conviction is for an offense that
occurred subsequent to the first previous conviction having become final, on
conviction he shall be punished by imprisonment in the institutional division
of the Texas Department of Criminal Justice for life, or for any term of not
more than 99 years or less than 25 years.

Tex. Penal Code Ann. ' 12.42(d) (Vernon
Supp. 2006).








The indictment alleged that the primary offense occurred on
June 23, 2004; that on August 15, 1985, appellant was convicted in federal
court of the felony offense of distribution of, and aiding and abetting in the
distribution of, cocaine in Cause No. H-85-40-01; and on July 30, 1992,
appellant was convicted in state court of the felony offense of possession of a
controlled substance in Cause No. 566464.  Appellant complains that the
indictment alleged only that he had been previously convicted of two felony
offenses but failed to allege that the first prior conviction became final
before he committed the offense giving rise to the second prior conviction. 
Therefore, appellant argues that the indictment did not allege he was an
habitual offender under section 12.42(d).  He further contends that, as a
result, the trial court inaccurately admonished him on the applicable range of
punishment, thereby preventing him from knowingly and voluntarily entering a
guilty plea.[4]       In
support of his argument, appellant cites to Porter v. State, 566 S.W.2d
621 (Tex. Crim. App. 1978), in which the court found there was no evidence to
show that appellant=s second previous conviction was for an
offense committed after the first previous conviction had become final.  See
id. at 622.  However, Porter is inapposite.  Where a defendant
pleads Atrue@ to the
enhancement paragraphs, he waives the complaint that the evidence is
insufficient to support a finding that the prior convictions were final.  Id. 
Although Porter is relevant when an accused challenges the
sufficiency of the evidence proving the prior convictions, it is not relevant
when, as here, the accused argues that the language of the indictment fails to
give adequate notice that the State will attempt to prove habitual offender
status.  AThe averment in an indictment that an accused person
has been convicted is sufficient to charge the finality of the prior
felony conviction.@  Jones v. State, 711 S.W.2d 634,
635 (Tex. Crim. App. 1986) (en banc).  Finally, Aif an indictment
contains two enhancement allegations and the accused pleads >true= to the
allegations concerning the prior convictions, the punishment is absolutely
fixed by law . . . .@  Harvey v.
State, 611 S.W.2d 108, 111 (Tex. Crim. App. 1981) (en banc).  Thus,  it is
unnecessary as a matter of law to admonish an accused who pleads Atrue@ or Aguilty@ to enhancement
convictions alleged in the indictment.  Id. at 112. 

Here, the indictment charged two prior convictions, and was
therefore sufficient to charge the finality of the prior convictions. 
Appellant did not object to the form or the substance of the indictment prior
to his plea bargain and sentencing, but instead pleaded Atrue@ to two prior
convictions and was correctly admonished on the range of punishment mandated by
Section 12.42(d) of the Texas Penal Code:

The Court:    You stand charged by
indictment with the felony of possession of a controlled substance alleged to
have occurred on June 23rd, 2004, in Harris County.  You have also
allegedly been convicted twice of felonies, and so the range of punishment that
you are facing today is no less than 25 years, no more than 99 years or life in
the Institutional Division of the Texas Department of Criminal Justice.

* * * * *








Mares:         Guilty.

The Court:    Guilty.  And is it
true that you are the same Samuel Mares who was convicted on August 15, 1985,
in Cause No. H854001 in the United States District Court for the Southern
District of Texas, and you were convicted of the felony offense of distribution
of cocaine and aiding and abetting in the distribution of cocaine?  Is that
true?

Mares:         Yes.

The Court:    Is it also true that
you are the same Samuel Mares who was on July 30, 1992, in Cause No. 566464, in
the 230th District Court of Harris County, were convicted of the
felony offense of possession of a controlled substance?  Is that also true?

Mares:         Yes, ma=am.

The Court:    Sir, are you pleading
guilty and true because you are guilty of the crime and these enhancement
paragraphs are true and for no other reason?

Mares:         Yes,
ma=am.

Evidence
of the sequence of the prior convictions was solicited and admitted by
appellant=s counsel at the hearing on appellant=s motion for new trial:

Q:        What was your discussion?

A:        Well, that he was sentenced first in the federal conviction,
served that sentence, got out and committed another offense and was sentenced
in the State court.

* * * * *

Q:        And did you have a discussion with him about the indictment, about
how it read?

A:        I don=t recall discussing the particulars of the indictment
other than they alleged the two prior convictions.

Q:        But Samuel Mares did know that he went to the Fed prison and
got outC

A:        Yes.

Q:        Cand then once he is out, he commits a new offenseC 

A:        Correct.








Q:        Cwent to the pen, and then he committed the offense
that occurred in June 23rd of 2004?

A:        Correct.

Even if appellant preserved his allegations of error in the
language of the indictment, the allegation is without merit.  Because the
finality and sequence of appellant=s two prior
convictions were sufficiently alleged and proved, appellant=s second issue is
overruled.

V.  Conclusion

For the foregoing reasons, we affirm the trial court=s judgment.

 

 

 

/s/      Eva M. Guzman

Justice

 

 

Judgment rendered and Substitute
Memorandum Opinion filed February 1, 2007.

Panel consists of Chief Justice
Hedges and Justices Yates and Guzman.

Do Not Publish C Tex.
R. App. P. 47.2(b).









[1]  Appellant does not challenge the validity of his
arrest.





[2]  During cross-examination, appellant admitted that he
asked coffee shop employees if there was a back exit to the coffee shop, and
was told there was none.





[3]  See Pettigrew, 908 S.W.2d at 570 (AA search under Belton is allowed even when the
arrestee has been handcuffed and placed in a police car.@).  





[4]  Article 26.13 of the Texas Code of Criminal Procedure provides, in relevant part: A(a) Prior to accepting a plea of guilty or a plea of
nolo contendere, the court shall admonish the defendant of: (1) the range of
the punishment attached to the offense . . . .@  Tex. Code Crim. Proc. Ann.
art. 26.13(a)(1) (Vernon Supp. 2006).