COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-170-CR

 

 

STEVE MICHAEL ADAMS                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 415TH
DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In one point, Appellant Steve Michael Adams
asserts that the trial court erred by finding the search of Adams=s
vehicle was a justifiable search incident to the arrest of a passenger in Adams=s
vehicle.  We
affirm.

 








II. 
Factual and Procedural Background

The grand jury indicted Adams for possession of a
controlled substance, namely methamphetamine, in the amount of four grams but
less than two hundred grams.  Adams filed
a motion to suppress the evidence.

At the suppression hearing, Adams called Cy Crum,
an investigator with the Weatherford-Parker County Special Crimes Unit.  Investigator Crum testified that he had
executed a search warrant on April 14, 2006, at the residence of Jimmy
Mack.  Approximately one hour after the
search had begun at Mack=s residence, Adams drove
up.  Investigator Crum ordered Adams and
his passenger, Tina Severance, out of the vehicle.  Investigator Crum testified that he had known
Severance by sight and that she was wanted for several arrest warrants, so he
had arrested her immediately. 








Shortly after Adams and Severance vacated the
vehicle, Investigator Crum conducted a search of the vehicle.  Investigator Crum testified that he had
searched the vehicle in the area of Severance=s
immediate control and had found the controlled substance exhibits in a Marlboro
cigarette box as well as several other exhibits consistent with identity theft
offenses.  Investigator Crum said that
all of the exhibits that were found and seized had been located in the front
seat of Adams=s vehicle forward.  Specifically, during his search, Investigator
Crum located a cigarette box containing two baggies of methamphetamine in
between the driver=s seat and the center
console.  Upon finding the drugs,
Investigator Crum arrested Adams. 
Investigator Crum testified that he believed his search of Adams=s
vehicle was justified as a search conducted pursuant to the arrest of
Severance, who had been in the vehicle immediately prior to her arrest.

Adams, testifying on his own behalf, said that he
had been dropping off Severance after going to the races and had no connection
with Mack=s residence when police came
running out from behind trees, told them to Afreeze@ and to
get out of the truck, which they did. 
Adams did not live at Mack=s
residence, nor was he or his car named in the search warrant.  Adams said that he was not sure exactly when
they searched his vehicle but that he had been handcuffed and searched at some
point and had been taken behind the truck. 
Adams testified that he had been taken behind the truck while Severance
had been taken to the nearest garage, approximately fifteen yards away.  Adams testified that he had never consented
to the search of his vehicle.

After Adams=s motion
to suppress was denied, Adams entered a plea of Aguilty.@  Pursuant to a plea agreement, the trial court
assessed Adams=s punishment at five years=
confinement.  This appeal followed. 

 








III. 
Standard of Review








We review a trial court=s ruling
on a motion to suppress evidence under a bifurcated standard of review.  Amador v. State, 221 S.W.3d 666, 673
(Tex. Crim. App. 2007); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1997).  In reviewing the trial court=s
decision, we do not engage in our own factual review.  Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990); Best v. State, 118 S.W.3d 857, 861 (Tex. App.CFort
Worth 2003, no pet.).  The trial judge is
the sole trier of fact and judge of the credibility of the witnesses and the
weight to be given their testimony.  Wiede
v. State, 214 S.W.3d 17, 24-25 (Tex. Crim. App. 2007); State v. Ross,
32 S.W.3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by State
v. Cullen, 195 S.W.3d 696 (Tex. Crim. App. 2006).  Therefore, we give almost total deference to
the trial court=s rulings on (1) questions of
historical fact, even if the trial court=s
determination of those facts was not based on an evaluation of credibility and
demeanor, and (2) application‑of‑law‑to‑fact questions
that turn on an evaluation of credibility and demeanor.  Amador, 221 S.W.3d at 673; Montanez
v. State, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); Johnson v.
State, 68 S.W.3d 644, 652‑53 (Tex. Crim. App. 2002).  But when application-of-law-to-fact questions
do not turn on the credibility and demeanor of the witnesses, we review the
trial court=s rulings on those questions de
novo.  Amador, 221 S.W.3d at 673; Estrada
v. State, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); Johnson, 68
S.W.3d at 652‑53.

Stated another way, when reviewing the trial
court=s ruling
on a motion to suppress, we must view the evidence in the light most favorable
to the trial court=s ruling.  Wiede, 214 S.W.3d at 24; State v.
Kelly, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact
findings, we determine whether the evidence, when viewed in the light most
favorable to the trial court=s
ruling, supports those fact findings.  Kelly,
204 S.W.3d at 818-19.  We then review the
trial court=s legal ruling de novo unless
its explicit fact findings that are supported by the record are also
dispositive of the legal ruling.  Id.
at 819.

When the record is silent on the reasons for the
trial court=s ruling, or when there are no
explicit fact findings and neither party timely requested findings and
conclusions from the trial court, we imply the necessary fact findings that
would support the trial court=s ruling
if the evidence, viewed in the light most favorable to the trial court=s
ruling, supports those findings.  Id.;
see  Amador, 221 S.W.3d at 673; Wiede,
214 S.W.3d at 25.  We then review the
trial court=s legal ruling de novo unless
the implied fact findings supported by the record are also dispositive of the
legal ruling.  Id.








We must uphold the trial court=s ruling
if it is supported by the record and correct under any theory of law applicable
to the case even if the trial court gave the wrong reason for its ruling.  State v. Stevens, 235 S.W.3d 736, 740
(Tex. Crim. App. 2007); Armendariz v. State, 123 S.W.3d 401, 404 (Tex.
Crim. App. 2003), cert. denied, 541 U.S. 974 (2004).  The Fourth Amendment protects against
unreasonable searches and seizures by government officials.  U.S. Const.
amend. IV; Wiede, 214 S.W.3d at 24. 
To suppress evidence because of an alleged Fourth Amendment violation,
the defendant bears the initial burden of producing evidence that rebuts the
presumption of proper police conduct.  Amador,
221 S.W.3d at 672.  A defendant satisfies
this burden by establishing that a search or seizure occurred without a
warrant.  Id.  Once the defendant has made this showing, the
burden of proof shifts to the State, which is then required to establish that
the search or seizure was conducted pursuant to a warrant or was reasonable.  Id. at 673; Torres v. State,
182 S.W.3d 899, 902 (Tex. Crim. App. 2005); Ford v. State, 158 S.W.3d
488, 492 (Tex. Crim. App. 2005).








Whether a search is reasonable is a question of
law that we review de novo.  Kothe v.
State, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  Reasonableness is measured by examining the
totality of the circumstances.  Id.
at 63.  It requires a balancing of the
public interest and the individual=s right
to be free from arbitrary detentions and intrusions.  Id. 
A search conducted without a warrant is per se unreasonable unless it
falls within one of the Aspecifically defined and
well-established@ exceptions to the warrant
requirement.  McGee v. State, 105
S.W.3d 609, 615 (Tex. Crim. App.), cert. denied, 540 U.S. 1004 (2003); see
Best, 118 S.W.3d at 862.  

IV. 
Analysis

Adams articulates his position as follows: 

[Adams] would argue that
in the case where a passenger is arrested and there is a proposed search,
incident to arrest, of the passenger compartment of the vehicle, there must be
some articulate nexus between the arrestee and the owner occupant for there to
be a valid search incident to arrest as to the owner occupant.  If not, a warrant should be obtained to
satisfy the laws under the Fourth Amendment of the United States Constitution
and Article I, Section 9 of the Texas Constitution.

 








The State disagrees because it argues that the Asearch
was a valid application of the >bright
line= search
incident to arrest rule set forth by the United States Supreme Court.@  Adams cites a single case in support of his
position, State v. Kelly, 963 S.W.2d 866 (Tex. App.CSan Antonio
1998, no pet.).  While that case is
distinguishable, as will be discussed momentarily, it does provide a relevant
overview of a search incident to arrest. 
Factually, Officer Ovalle had followed Kelly as he drove home and
arrested Kelly at his home.  Following
his arrest for outstanding traffic citations, Officer Ovalle found cocaine in
Kelly=s
car.  The question presented in Kelly,
as opposed to the facts presented to this court, was whether the trial court
correctly suppressed the evidence of the cocaine because Kelly had arguably
been in his house for a sufficient time prior to his arrest so that he was not
a recent occupant of the vehicle.  This
is not the issue before this court.  

Nevertheless, our sister court recounts a concise
overview of an automobile search incident to an arrest as is germane to the
facts before this court.  








The Fourth Amendment to
the United States Constitution and article I, section 9 of the Texas
Constitution guarantee the right of the people to be secure against
unreasonable searches of their persons, houses, papers, and effects.  U.S.
Const. amend.  IV; Tex. Const. art. I, ' 9. AIt is a first principle
of Fourth Amendment jurisprudence that the police may not conduct a search
unless they first convince a neutral magistrate that there is probable cause to
do so.@  New York v. Belton, 453 U.S. 454, 457,
101 S. Ct. 2860, 2862, 69 L.Ed.2d 768 (1981). 
Thus, warrantless searches are per se violative of the Fourth Amendment=s proscription of
unreasonable searches unless they fall within one of the specifically
established exceptions.  Mincey v.
Arizona, 437 U.S. 385, 390, 98 S. Ct. 2408, 2412, 57 L.Ed.2d 290
(1978).  One recognized exception to the
Fourth Amendment=s warrant requirement is
that an officer may search the area within the immediate control of an
arrestee.  Chimel v. California,
395 U.S. 752, 762‑63, 89 S. Ct. 2034, 2039‑40, 23 L.Ed.2d 685
(1969).  The underlying rationale for
this rule is the need to remove any weapons that the arrestee might seek to use
to resist arrest and to prevent the concealment of the destruction of
evidence.  Id. at 763, 89 S. Ct.
at 2040.  Where the arrestee was the
occupant of a vehicle, however, police had difficulty in determining whether
the passenger compartment was actually within an arrestee=s reach.  In New York v. Belton, the United
States Supreme Court confronted the difficulty in the application of the Chimel
standard to searches of automobiles and noted:  

While the Chimel
case established that a search incident to an arrest may not stray beyond the
area within the immediate control of the arrestee, courts have found no
workable definition of >the area within the
immediate control of the arrestee= when that area arguably includes the interior of
an automobile and the arrestee is its recent occupant.  

Belton, 453 U.S. at 460, 101 S.
Ct. at 2864.   The court then held that
when an officer makes a lawful custodial arrest of the occupant of an
automobile, the officer may conduct a contemporaneous search of the passenger
compartment of that automobile.  Id.  Belton thus defined the passenger
compartment of an automobile as being within the hypothetical immediate control
of an occupant or recent occupant of the vehicle. . . . We are mindful that the
Belton rule was crafted in an effort to free officers in the field from
making difficult legal decisions during the often‑volatile circumstances
of an arrest. . . .  Belton=s Abright‑line@ only eliminates the
officer=s need to determine what
constitutes the area within the arrestee=s reach when the area includes the interior
passenger compartment of a vehicle and the arrestee is its recent occupant[.]

 

Kelly, 866 S.W.2d at 868-69.   








Adams appears to argue that there is a
distinction between a search of the passenger compartment of a vehicle when the
arrestee is the driver versus when the arrestee is a passenger.  We see no such distinction.  The Fourth Amendment warrant exception
previously cited also makes no such distinction. Investigator Crum found
illegal drugs in the passenger compartment, on the driver=s side
of the vehicle adjacent to the driver=s seat,
and Adams was the driver.  As such, the
search was proper, as was the denial of the motion to suppress.  We overrule Adams=s sole
point.

 

V. 
Conclusion

Having
overruled Adams=s sole point, we affirm
the trial court=s judgment. 

 

BOB
MCCOY

JUSTICE

 

PANEL A:   CAYCE,
C.J.; LIVINGSTON and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P.
47.2(b)

 

DELIVERED: January 31,
2008











[1]See Tex. R. App. P. 47.4.